

# THE FLORIDA BAR



651 EAST JEFFERSON STREET
TALLAHASSEE, FLORIDA 32399-2300

**JOHN F. HARKNESS, JR.**
EXECUTIVE DIRECTOR

(850) 561-5600
WWW.FLABAR.ORG

August 26, 2015

Mr. Gerrard D. Jones  #503034 Lockdown J2105
Santa Rosa Correctional Institution
5850 East Milton Road
Milton, FL 32583

Re:    Ms. Kathleen Carol Hagan; RFA No.: 16-1716

Dear Mr. Jones:

Your inquiry concerning the above-referenced attorney has been referred to me for my review.

Your submission to The Florida Bar pertains to a letter from Ms. Hagan, who is employed by the Attorney General's Office, warning you about the consequences you face if you do not voluntarily dismiss a case that her office has deemed has no merit. You disagree with the law she cites. The Florida Bar does not control the Attorney General's interpretation of the law pertaining to prisoner lawsuits or its interpretation of case law.

After careful consideration, I conclude that the matters referenced in your inquiry do not constitute violations of the Rules of Professional Conduct, and accordingly, your inquiry does not fall within the purview of the grievance system framework.  Consequently, I have closed our record in this matter.  Please be advised that my action does not preclude you from consulting with private counsel, nor does it preclude you from exercising any legal remedy which may be available to you.

Pursuant to the Bar's records retention schedule, the computer record and file will be disposed of one year from the date of closing.

Sincerely,

Maura Canter, Bar Counsel
Attorney Consumer Assistance Program
ACAP Hotline 866-352-0707

cc:    Ms. Kathleen Carol Hagan

# THE FLORIDA BAR
## INQUIRY/COMPLAINT FORM

RECEIVED

15 AUG 19 AM 9: 49

ATTORNEY GENERAL'S OFFICE
GENERAL LEGAL SERVICES

**PART ONE  (See Page 1, PART ONE – Required Information.):**

| | |
|---|---|
| Your Name: GERRARD D. JONES #503034 | Attorney's Name: KATHLEEN C. HAGAN |
| Organization: SANTA ROSA PRISON (LOCKDOWN JUN05) | Address: THE CAPITOL  PL-01 |
| Address: 5850 E. MILTON ROAD | City: TALLAHASSEE          State: FL. |
| City: MILTON          State: FL. | Zip Code:          Telephone: 850 • 414 • 3300 |
| Zip Code: 32583   Phone: 850 • 983 • 5800 | 32399-1050 |
| Email:          (PRISON OFFICE) | |
| ACAP Reference No. | |

**PART TWO  (See Page 1, PART TWO – Facts/Allegations.):**  The specific thing or things I am complaining about are:

1. THIS BAR COMPLAINT IS TO BRING TO YOUR ATTENTION, VIOLATIONS OF BAR RULES ABOUT "INTEGRITY," "CANDOR", "INTENTIONAL MISREPRESENTATIONS," AND "DECEIT."

2. KATHLEEN C. HAGAN IS SENDING OUT "LETTERS" TO INMATES, "THREATENING DISCIPLINARY LOCKDOWN, GAIN-TIME LOSS, ETC," FOR OTHERWISE LAWFUL USE OF THE JUDICIAL PROCESS, AND SHE INVOKES THE "CLOUT" OF THE (LEON) JUDGES UNTO HERSELF.

3. MOREOVER, SHE HAS INVOKED THE NAMES OF EVERY JUDGE IN LEON COUNTY, CONTENDING THAT THESE JUDGES "AGREE" WITH HER.

4. HOWEVER, SHE HAS TOTALLY FABRICATED THE JUDGES' POSITIONS.

5. SHE IS SEEKING, BY HER "LETTERS" TO HAVE A "CHILLING-EFFECT" ON PRISONERS "ACCESS TO COURT, THEREIN VIOLATING LAW/RULES.

**PART THREE  (See Page 1, PART THREE – Witnesses.):**  The witnesses in support of my allegations are: [see attached sheet].

**PART FOUR  (See Page 1, PART FOUR – Signature.):**  *Under penalties of perjury, I declare that the foregoing facts are true, correct and complete.*

THE BAR AND COMPLAINT ARE TWO SEPARATE THE #1's ALL ARE FOLLOWED BY THE REST (PAGES #2 THRU #24) "COMPLAINT" IT AS TO THIS BEING A "COMPLAINT" IVE FILED IT TO THE BAR AND "A" EACH CASE. AS A "MOTION" IN

Signature _Gerrard D. Jones_    Date 8-12-15

GERRARD D. JONES #503034
(COMPLAINANT PRO SE)

(1)

JUDICIAL CIRCUIT, IN AND FOR
LEON COUNTY, FLORIDA

GERRARD D. JONES,                    CASE # 2014-CA-3256
    PETITIONER,                      HON. JUDGE GEORGE S. REYNOLDS, III
    -v-                              ("COLLATERAL CRIMINAL LITIGATION")
TORREY M. JOHNSON, AND              (IN RE: 2015-CA-1304; 2014-CA-3287)
FLA. DEPT. OF CORRECTIONS,
    RESPONDENTS.

AMENDED/ADDENDUM "REPLY" TO RESPONDENT'S
RESPONSE AND; REQUEST FOR JUDICIAL NOTICE

COMES NOW PETITIONER, GERRARD D. JONES, PRO SE,
IN THE ABOVE-STYLED CAUSE, STATING:

1.      * COURT DEADLINE OF 8-14-2015 * (SEE ATTACHED) *
PETITIONER, GERRARD D. JONES, IN NOTIFICATION OF COMPLIANCE
WITH THE ATTACHED "ORDER GRANTING EXTENSION", HEREBY FILES
THIS "AMENDED/ADDENDUM" TO HIS PRIOR "REPLY", OF WHICH
THE ATTACHED DOCUMENTS ARE SUPPLEMENTAL TO IN
ADDITION TO THE AFOREMENTIONED PREVIOUS "REPLY".

2. PETITIONER SEEKS "JUDICIAL NOTICE" (F.S. 90.201; 90.202; 90.203; 90.204),
OF FILES/RECORDS/PLEADINGS OF CASE #'S 2015-CA-1304; 2014-CA-3287.
                    REQUEST FOR CONSOLIDATION

3. PETITIONER, GERRARD D. JONES, SEEKS "CONSOLIDATION" AS TO ALL CASES.

4. JURAT/CERTIFICATE OF SERVICE

5. I DECLARE, UNDER PENALTY OF PERJURY OATH (F.S. 92.525(2)) THAT I HAVE READ THIS "REPLY"
AND ALL FACTS ARE TRUE, SIGNED, SWORN, DATED 8-12-15; AND, THAT THIS "REPLY" W/ATTACHMENTS"
WAS SENT ("MAILBOX RULE") ON 8-12-15, WITH THE ORIGINAL AND COPIES TO:

| (ORIGINAL) | (1 COPY) | (1 COPY) | (1 COPY) | (1 COPY) | (1 COPY) |
|---|---|---|---|---|---|
| CLERK OF COURT | ASSISTANT ATT. GEN. | D.O.C. GENERAL COUNSEL | CHIEF JUDGE | THE FLORIDA BAR | |
| C/O JUDGE G. REYNOLDS | KATHLEEN C. HAGAN | JENNIFER PARKER | LEON COUNTY | BRANCH STAFF ATTORNEY | |
| 301 S. MONROE ST. | THE CAPITOL PL-01 | 501 S. CALHOUN ST. | 301 S. MONROE ST. | 651 E. JEFFERSON ST. | |
| TALL. FL. 32301 | TALL, FL. 32399-1050 | TALL, FL. 32399-2500 | TALL., FL. 32301 | TALL., FL. 32399-2300 | |

(1 COPY)
G. Herrod D Jo
GERRARD D. JONES #503034
SANTA ROSA C. I ANNEX
(LOCKDOWN/DC CELL #J2105)
5850 E. MILTON ROAD
MILTON, FL. 32583
(PETITIONER PRO SE)

| (COPY) | (1 COPY) | (1 COPY) |
|---|---|---|
| FLORIDA SENATOR | MR. WAYNE HODRICK | PENSACOLA NEWS JOURNAL. |
| MR. GREG EVERS | PRESIDENT, NAACP" | ATTN: INVESTIGATIVE REPORTER |
| 209 E. ZARAGOZA ST | P.O. BOX 17 | 2 NORTH PALAFOX ST. |
| PENSACOLA, FL. | MILTON, FLORIDA | PENSACOLA, FL. |
| 32502-6048 | 32572 | 32502 |

(1)

IN THE CIRCUIT COURT, 2nd

JUDICIAL CIRCUIT, IN AND FOR

LEON COUNTY, FLORIDA

GERRARD D. JONES,         CASE # 2015-CA-1304

     PETITIONER,         HON. JUDGE GEORGE S. REYNOLDS III

-V-

K.L. MACK, AND         ("COLLATERAL CRIMINAL LITIGATION")

FLORIDA DEPT. OF CORRECTIONS,

     RESPONDENTS.

NOTICE OF "THREATS" MADE BY ATTORNEY KATHLEEN C. HAGAN,
AND; REQUEST FOR "CLARIFICATION/DECLARATORY JUDGMENT"
OF PETITIONER'S RIGHT TO PROCEED IN THIS LITIGATION

COMES NOW PETITIONER, GERRARD D. JONES, PRO SE, STATING:

1. PETITIONER FILED A MANDAMUS ACTION, ALLEGING (INTER ALIA)
THAT HE WAS DENIED DUE PROCESS OF LAW; THAT HE HAS
BEEN SUBJECTED TO (UNLAWFUL) "atypical significant hardships",
AND DISENFRANCHISED OF HIS RIGHTS UNDER THE "ADA"
(AMERICANS WITH DISABILITIES ACT OF 1990).

2. THIS COURT RECEIVED THE PETITION, AND, BASED UPON
ITS CONTENTS, ISSUED A "SHOW CAUSE ORDER" COMPELLING
RESPONDENT TO "RESPOND TO ALL OF THE ALLEGATIONS," THEREOF.

3. KATHLEEN C. HAGAN, AS COUNSEL FOR RESPONDENTS,
HAS SUBSEQUENTLY ISSUED A WRITTEN LETTER DATED
AUGUST 3RD, 2015.

4. THE LETTER IS A "THREATENING, INTIMIDATORY AND
ILLEGAL ATTEMPT" TO IMPOSE A "CHILLING-EFFECT"
ON PETITIONERS RIGHTS OF ACCESS TO THE COURTS.

5. PETITIONER HAS FILED THE ATTACHED "FLORIDA BAR COMPLAINT,"
SIMULTANEOUSLY WITH THE INSTANT PLEADING, AND
IS COPYING THE CHIEF ADMINISTRATIVE JUDGE IN
LEON COUNTY, FLORIDA, TO MAKE KNOWN THE ACTS
OF K.C. HAGAN THAT VIOLATE THE LAW AND THE BAR RULES.
AND TO NOTIFY THE JUDGES OF HAGAN'S USE OF THEIR "CLOUT"
TO SERVE HER INTENTS TO DENY ME ACCESS TO THE COURTS.

1)

6. I AM A MENTALLY-IMPAIRED PRISONER, WHO SUFFERS VARIOUS MENTAL DISORDERS AND I'm ON PSYCHOTROPIC MEDS, AND THE MEDICAL, MENTAL HEALTH, SECURITY STAFF, LAW LIBRARY STAFF AND K.C. HAGAN HAVE CLEARLY BEEN ADVISED ABOUT SUCH BY ME IN WRITING BY ADMINISTRATIVE PLEADINGS AND COURT PLEADINGS. K.C. HAGAN IS VERY FAMILIAR WITH ME TOO BY HER KNOWLEDGE OF MY LEGAL PLEADINGS. SHE IS CURRENTLY COUNSEL OF RECORD FOR THE STATE OF FLORIDA (LITIGATING MATTERS FOR THE FLORIDA DEPARTMENT OF CORRECTIONS), REGARDING ME, IN LEON COUNTY CASE #'s 2014-CA-3256; 2014-CA-3287; 2015-CA-1304; FIRST DCA (APPEALS) #1D15-2377 AND 1D15-2106.

7. IN EACH OF THE LEON COUNTY CASES, K.C. HAGAN IS COUNSEL OF RECORD FOR PRISON OFFICIALS.

8. EACH OF THESE CASE INVOLVE PRISON OFFICIALS' WRITING ("RETALIATORY, REPRISAL-BASED") DISCIPLINARY REPORTS (HEREINAFTER, "DR's") AGAINST ME FOR MY HAVING REPORTED AN INMATE MURDER; REPORTED SEXUAL ABUSE (BY PRISON X-RAY TECHNICIAN, EMANUEL LAWSON); REPORTED PRISON OFFICERS SMUGGLING COCAINE, PILLS, MARIJUANA, K-2 SPICE, CIGARETTES AND WEAPONS/ ESCAPE PARAPHENALIA; REPORTED PHYSICAL ABUSE OF A MENTALLY-RETARDED PRISONER (JOHN SMITH #135651).

9. REPORTED REPRISALS/RETALIATIONS OF PRISON STAFF (AT JEFFERSON C.I. AND SANTA ROSA C.I.) AGAINST ME FOR MY INFORMING THE FBI, FDLE, INSPECTOR GENERAL, STATE ATTORNEY'S OFFICES, DEPARTMENT OF JUSTICE (FEDERAL), NEWS MEDIA, AND SENATOR GREG EVERS OF PRISON STAFF ABUSE; DISLOCATING MY LEFT ARM/SHOULDER, REFUSING MY MEDICATIONS FROM ME, WITHHOLDING FOOD/WATER/SHOWERS FROM ME; STEALING MAIL (MONEY ORDERS)/LEGAL MAIL, WRITING BOGUS DR'S.

10. CONSPIRING TO SEND ME TO SANTA ROSA (THE FORMER WORKPLACE OF TORRY M. JOHNSON, WHO CONSPIRED WITH ANTONIO M. HUDSON TO INJURE ME); SET SANTA ROSA STAFF TO WRITING BOGUS DR'S AGAINST ME; SET SANTA ROSA STAFF TO THREATEN ME

(2)

WITH SEXUAL ABUSE/RACIAL DISCRIMINATION BY (QUOTE) "STICKING A MOPHANDLE UP (MY) BLACK-COON-NIGGER ASS."

11. SET SANTA ROSA STAFF TO DEPRIVING ME OF FOOD/WATER, SHOWERS; SET SANTA ROSA STAFF TO REFUSE ME OF VITAL BODILY FUNCTIONS, RESULTING IN ME DEFECATING/URINATING ON MYSELF WHILE IN A (TELEPHONE BOOTH-SIZED) SHOWER/HOLDING CELL.

12. THEN, LEAVING ME FOR 8 HOURS ON THAT FLOOR, UNABLE TO CLEAN MYSELF; SET SANTA ROSA STAFF TO HINDER, DELAY, DENY, OBSTRUCT AND UNLAWFULLY INTERFERE WITH MY ACCESS TO THE PRISON GRIEVANCE PROCESSES AND STEAL, TAMPER, ALTER, RETARD MY LEGAL PLEADINGS TO VARIOUS COURTS AND ADMINSTRATIVE (LEGAL) ENTITIES, AND OTHER VIOLATIONS OF MY CIVIL RIGHTS, MY CONSTITUTIONAL RIGHTS (FEDERAL & FLORIDA) AS WELL AS DENY ME PROPER MENTAL HEALTH TREATMENTS THAT I'M LEGALLY ENTITLED TO UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA"), UNDER THE PRISON RAPE ELIMINATION ACT (" PREA"), UNDER THE "CIVIL RIGHTS OF INSTITUTIONALIZED PERSONS" (42 U.S.C. 1997(E)), THE "KU KLUX KLAN ACT OF 1871," (42 U.S.C. 1983), AND, (GENEVA) "CONVENTION ON HUMAN RIGHTS."

13. K.C. HAGAN HAS TOLD PRISON STAFF THAT WHEN WRITING DISCIPLINARY REPORTS, TO REFRAIN FROM FORFEITING THE PRISONERS' GAIN-TIME (IN ALL BUT THE MOST SEVERE OF CIRCUMSTANCES).

14. THE REASON/PREMISE, AS ARTICULATED BY K.C. HAGAN, IS THAT NO MATTER WHAT "OTHER" PUNITIVE ACTIONS PRISON STAFF TAKE AGAINST THE PRISONER (LENGTHY "INVESTIGATIONS"/DISCIPLINARY LOCKDOWN, GASSINGS/MACINGS, FOOD/WATER/CLOTHING DEPRIVATIONS; DENIALS OF MEDICAL/MENTAL HEALTH CARE) — THESE THINGS ARE "BEYOND JUDICIAL REVIEW" BY THE COURTS BY PRISONERS' TRADITIONAL USE OF THE "WRIT OF MANDAMUS," AS, PER K.C. HAGAN, IF

(3)

"NO GAIN-TIME IS TAKEN," THERE WILL BE NO FURTHER
SCRUTINY IN 99.9% OF THE CASES BEYOND THE
PRISON (ADMINISTRATIVE) GRIEVANCE PROCESS.

15. K.C. HAGAN HAS ARRIVED AT THIS CONCLUSION
(AND, HAS COUNSELLED PRISON OFFICIALS) HERETO,
BY HER (NARROW) READING OF THREE (MAIN) CASES,
WHICH I WILL DISCUSS FULLY WITHIN THIS PLEADING.

16. THE IMPORTANT UNDERLYING POINT WHICH IS
WORTHY OF EXAMINATION HERE (INTER ALIA), IS
THAT WHEREAS THERE IS A RIGHT TO MANDAMUS
REVIEW OF A DR, AND THERE ARE NO (COURT-IMPOSED)
"FILING FEES/COSTS" ASSOCIATED THEREWITH, AND
99.9% OF PRISONER'S WHO LITIGATED THE DR IN COURT
(AFTER EXHAUSTING PRISON ADMINISTRATIVE GRIEVANCES)
WOULD FACE NO BURDEN OF LITIGATION COSTS.

17. THE PRISONER, IF UNSUCCESSFUL BY MANDAMUS
ACTIONS, WOULD (99.9%) OF THE TIME, "LEAVE IT
AT THAT," ALBEIT, FEELING THAT SOME MEASURE OF
FUNDAMENTAL FAIRNESS HAD BEEN ACCORDED THE
PRISONER BY THE JUDICIARY, NOTWITHSTANDING THE OUTCOME.
A VERY VERY SMALL NUMBER (I DARE SAY, $1/10,000^{\underline{th}}$%),
WOULD CONTINUE THE LITIGATION BEYOND THE COURT'S
DENIAL OF MANDAMUS ACTION.

18. THE PROCEDURE (POST-MANDAMUS) IS TO FILE A CIVIL SUIT
(NORMALLY 42.U.S.C. 1983 ACTIONS) IN THE STATE OR
FEDERAL COURTS, TO WHICH HUNDREDS OF DOLLARS IN
FEES/COSTS ARE A PREREQUISITE TO THAT TYPE OF REVIEW.

19. THE PRISONER, EVEN IF SUCCESSFUL, WILL NORMALLY
NOT SEE "THE VICTORY" UNTIL FOUR (4) TO EIGHT (8)
YEARS HAVE ELAPSED, AS K.C. HAGAN (AND "COUNTERPARTS OF")
FILES MULTIPLE REQUESTS WITH THE COURT, ASKING FOR
"EXTENSIONS," CITING, (99.9% OF THE TIME) "CASELOAD/WORKLOAD".

20. MEANWHILE, THE AVERAGE PRISONER, NOTWITHSTANDING
HIS WORTHY/MERITORIOUS CASE, WILL BE DEPRIVED OF

(4)

ANY TANGIBLE USE OF THE SMALL MONETARY STIPENDS
HIS FAMILY WOULD OTHERWISE DEPOSIT IN THE PRISON
(INMATE) ACCOUNT FOR HEALTH AND COMFORT ITEMS,
AS THE FILING FEES/COSTS ARE NEARLY $400.00 DOLLARS.

21. THUS, PITTING "THE MERITS OF HIS LAWSUIT" AGAINST
"THE MERITS OF A FULL STOMACH" (HEALTH/COMFORT ITEMS, etc.) —
THE 99.99999% OF PRISONERS WILL NOT VENTURE <u>BEYOND</u>
THE TRADITIONAL "MANDAMUS" ACTION, "<u>WIN</u>, <u>LOSE</u>, <u>OR DRAW</u>."

22. HOWEVER, IN A FURTHER EFFORT TO SLAM THE
COURTHOUSE DOORS TO VIRTUALLY "all" DR-BASED
MANDAMUS ACTIONS —— K.C. HAGAN HAS TAKEN IT
UPON HERSELF TO DO "MASS-MAILINGS"(TO (99.9% OF)
ALL PRISONERS SEEKING COURT (MANDAMUS) RELIEF FROM
DR'S) — (OSTENSIBLY "WARNING" BUT REALLY) "THREATENING"
SANCTIONS (UNDER FLORIDA STATUTE 944.279(1)/33-601.314(9-32))
FOR THE PRISONERS WHO WILL NOT (AT K.C. HAGAN'S "URGINGS")
..."<u>VOLUNTARILY DISMISS (THE) CASE</u>"... AND <u>INSTEAD</u> decides to
<u>waste (K.C. HAGAN AND HER EMPLOYERS') time and resources</u>"....
            (COMPOSITE <u>EXHIBIT</u> "A", 4 PAGES TOTAL).

23. K.C. HAGAN, IN THAT SAME LETTER, ESPOUSES HER OPINION
THAT <u>WILLIAMS-V-TUCKER</u>, 87 So.3d 1270 (1ST DCA 2012) AND <u>SANDIN-V-CONNOR</u>,
515 U.S. 478 (1995) AND <u>WRIGHT-V-McDONOUGH</u>, 958 So.2d 1132 (1ST DCA 2007)
"HOLDINGS" ARE THAT:
"....<u>A PRISONER SUBJECTED</u> only to disciplinary confinement
lacks the requisite liberty interest necessary to
challenge a disciplinary report (IF HE FORFEITED NO GAIN-TIME)...."

24. THEREAFTER, JUST PRIOR TO PARAGRAPH #2 OF THE LETTER, K.C. HAGAN
STATES THAT:
"... THE DEPARTMENT OF CORRECTIONS HAS BEEN MAKING THIS ARGUMENT
FOR QUITE SOME TIME NOW, and the Second Judicial Circuit
in and for Leon County has adopted this rationale as
it pertains to petitions challenging prison disciplinary actions..."

(5)

25. THAT STATEMENT, BY K.C. HAGAN, IS ABSOLUTELY FALSE, MISLEADING, AND (INTENTIONALLY) DESIGNED TO HAVE A NEGATIVE, UNLAWFUL, INTIMIDATORY "CHILLING-EFFECT" ON MY (AND OTHER PRISONERS SIMILARLY SITUATED) RIGHTS TO ACCESS THE COURTS.

26. IN SHORT, K.C. HAGAN INTENTIONALLY MANIFESTS THE "BLANKET PROPOSITION" (FROM WHOLE CLOTH, MIND YOU) THAT: "ALL MANDAMUS ACTIONS ARE NOW DEEMED "FRIVOLOUS" AND "SANCTIONABLE" IN EVERY CASE, "SOLELY EXCEPTING," THOSE WHEREIN GAIN-TIME HRS BEEN FORFEITED."

27. K.C. HAGAN, AS A LAWYER, AN OFFICER OF THE COURT, AND AS A PUBLIC SERVANT (DUTY-BOUND TO UPHOLD THE FLORIDA/FEDERAL CONSTITUTIONS, LAWS AND ADMINISTRATIVE (CHAPTER 33) RULES) —— HAS SET INTO MOTION AN ILLEGAL METHOD BY WHICH TO ILLEGALLY DISENFRANCHISE ME (AND OTHER PRISONERS) OF THE RIGHTS OF ACCESS TO COURTS BY HER "POLL-TAX-LIKE TACTICS".

28. AMAZINGLY, NOT ONE OF LEON COUNTY, FLORIDA'S (CHIEF NOR CIRCUIT) JUDGES HAVE ISSUED ANY "ORDERS", "MEMORANDUMS," OR "NOTICES" of any kind WHICH EVEN REMOTELY HINT IN ANY WAY THAT THESE JUDGES HAVE "HELD" OR "ADOPTED" THAT "ALL MANDAMUS' ARE FRIVOLOUS ABSENT GAIN-TIME LOSS," AS IS THE PREMISE (WRONGLY IMPUTED TO LEON COUNTY JUDGES) BY K. C. HAGAN.

29. SUCH IS NOT A FAIR, PRINCIPLED NOR CORRECT BASIS UPON WHICH K.C. HAGAN SHOULD TAKE SUCH GENEROUS LIBERTIES IN HER SEEMINGLY SINGLE-MINDED QUEST TO SHUT-OUT THE (100,000 +) PRISONERS WHO ARE DIRECTLY SUBJECTED TO K.C. HAGAN's "COURTHOUSE-CLOSING" VIEWPOINTS.

30. AS PRIMARY LEGAL COUNSEL TO THE PRISON OFFICIALS WHO OVERSEE THE (100,000+) FLORIDA PRISONERS, K.C. HAGAN'S VIEWPOINTS/OPINIONS CARRY THE GREAT-WEIGHT OF "CERTAINTY/IMPRIMATUR" AS TO ALL MATTERS ARISING IN THE CONTEXT OF PRISON LITIGATION/DISPUTES.

(6)

31. K.C. HAGAN INTENTIONALLY MISLEADS PRISON OFFICIALS AS TO HER "ADVICE", WHICH ADVICE PRISON OFFICIALS UNQUESTIONINGLY EMBRACE, "AS IF UTTERED BY GOD."

32. IT DEFIES ALL LOGIC, TO ANYONE OTHER THAN THOSE WHO EMPLOY K.C. HAGAN, TO BELIEVE THAT LEON COUNTY JUDGES HAVE ALIGNED THEMSELVES IN MENTAL-LOCKSTEP WITH THE VIEWS OF K.C. HAGAN, BUT THAT "SOMEHOW" THE LEON COUNTY JUDGES "HAVEN'T GOTTEN AROUND TO INFORMING THE (100,000+) PRISONERS."

33. MOREOVER, THE CASES CITED BY K.C. HAGAN ARE NOT AS CLEAR-CUT AS SHE POSITS THEM TO BE, AS NEITHER OF THE CASES USES ANY LANGUAGE WHATSOEVER, TO THE EFFECT THAT K.C. HAGAN PURPORTS THEM DOING.

34. ADDITIONALLY, IN WRIGHT, THE LEON COUNTY JUDGE DENIED THE CASE "on the merits" AFTER ENTERTAINING THE MANDAMUS PETITION, WHICH, INCIDENTLY, DID NOT MAKE ANY MENTION OF WRIGHT HAVING "FORFEITED GAIN-TIME."

35. IN FACT, IN UPHOLDING THE (LEON) COURT'S DENIAL OF THE MERITS, THE FIRST DCA NEVERTHELESS RECOGNIZED THAT WRIGHT'S "CHALLENGE" (BY MANDAMUS) HAD "the potential of affecting the time he will spend in prison" AND, UPON THAT PREMISE, ORDERED PRISON OFFICIALS TO REMOVE THE MONETARY LIEN (WRONGLY) PUT UPON WRIGHT.

36. LIKEWISE, IN WILLIAMS, THE FIRST DCA UPHELD A ("MERITS") DENIAL, WHERE:
"... WILLIAMS FAILED TO DEMONSTRATE "any" LIBERTY INTEREST IMPLICATING THE PROTECTIONS OF THE DUE PROCESS CLAUSE ...."
IN SHORT, THE WILLIAMS OPINION DEMONSTRATES THAT THE COURT DID NOT simply limit itself to a determination of "THE 60 DAYS IN CONFINEMENT" aspect of the case. THE COURT LOOKED TO WHETHER THERE WAS "any" (OF A MULTITUDE OF) DUE PROCESS VIOLATIONS, AND, FINDING NONE, UPHELD THE LEON COUNTY JUDGES DENIAL. YET, IN WILLIAMS THE COURT DID NOT "BAR" THIS TYPE OF MANDAMUS.

(7)

37. K.C. HAGAN OVERLOOKS A VERY BASIC PRINCIPLE WHICH
THE FUNCTION OF JUDICIAL REVIEW ENTAILS —
AND THAT IS TO SATISFY ITSELF TOO THAT THERE IS
"SOME EVIDENCE" THAT UNDERGIRDS THE FINDING
OF GUILT, THAT THE DR IS BASED UPON.
SUCH A DISPOSITION IS REQUIRED BY WELL-ESTABLISHED
SUPREME COURT PRECEDENT, I.E., SUPERINTENDENT-V-HILL,
472 U.S. 445 (1985)("THE some evidence REQUIRED RULE");
WOLFF-V-MⅭDONNELL, 418 U.S. 539 (1974)("DUE PROCESS
REQUIRED IN PRISON DR HEARING INVOLVING "punitive segregation").

38. K.C. HAGAN ALSO CITES TO SANDIN-V-CONNOR, 515 U.S. 472 (1995),
WHEREIN THE U.S. SUPREME COURT DETERMINED THAT "30 DAYS"
DISCIPLINARY CONFINEMENT DID NOT PRESENT THE TYPE OF
"atypical, significant deprivation" IN WHICH A STATE
MIGHT CONCEIVABLY CREATE A LIBERTY INTEREST."

39. K.C. HAGAN, IN HER NARROW READING OF SANDIN, COMPLETELY
OVERLOOKS TWO (2) CRITICALLY-MATERIAL FACTUAL PREMISES
OF THE CASE, THE COURT AGREED THAT PRISON OFFICIALS
HAD PROVIDED "some evidence" OF THE PRISONER'S GUILT,
AND, THAT "HAWAII'S PRISON RULES" DID NOT CREATE
"any" liberty interests, WHILE Florida's system uses Wolff.

40. THUS, EVEN SANDIN LOOKED TO "some evidence" OF GUILT, AND,
EXAMINED THE CONTENTS OF HAWAII'S PRISON RULES TO
GAUGE WHETHER THAT STATE (AS IT WAS FREE TO) PROVIDED "any"
LIBERTY INTERESTS/DUE PROCESS PROTECTIONS beyond
THOSE GRANTED BY THE 14ᵗʰ AMENDMENT TO THE U.S. CONSTITUTION.

41. IN FACT, THE COURT FOUND THAT HAWAII'S PRISON RULES
DID NOT EVEN CONVEY THE WOLFF(V-MⅭDONNELL)"RIGHTS"
TO THAT HAWAII PRISONER, WHILE FLORIDA DOES. ADDITIONALLY,
SANDIN ALSO DELVED INTO THE "MERITS" OF WHETHER THE
FACTS OF THAT CASE DEMONSTRATED "atypical, significant hardship"
TO THE PRISONER "beyond" THE FACT OF BEING PUT INTO DISCIPLINARY
CONFINEMENT (AFTER THE "some evidence" GUILT FINDINGS).

42. HOWEVER, IN THE INSTANT CASE, I ALLEGED (INTER. ALIA) THAT:

(8)

(BEGIN QUOTES):

43. HERE, RESPONDENT'S DENIED MORE THAN "MERE OPPORTUNITY TO EARN GAINTIME", TO THIS BLACK PRISONER.

44. SO TOO, HAVE RESPONDENT'S DONE FAR MORE THAN THE "MERE PLACEMENT OF ME INTO DISCIPLINARY LOCKDOWN."

45. RESPONDENT PRISON OFFICIALS, IN RETALITION OF PETITIONER'S NOTIFYING THE FDLE OF A MURDER (BY "LOCKDOWN STAFF" AT JEFFERSON), AND FOR PETITIONER'S GRIEVANCE FILINGS AGAINST HUDSON AND JOHNSON — INTENTIONALLY ATTACKED PETITIONER, DISLOCATING HIS LEFT ARM/SHOULDER WHILE HE WAS HANDCUFFED BEHIND HIS BACK AND LEG-SHACKED AND NOT "RESISTING" ANY ORDERS; THEY COUNTERMANDED THE DOCTOR'S ORDER, WHICH WAS FOR ME TO BE SENT AWAY FROM JEFFERSON FOR ORTHOPEDIC SURGERY TO REPAIR WHAT HUDSON DID (DR. PLISKIN).

46. HUDSON AND JOHNSON ALSO ORDERED MEDICAL STAFF TO NOT GIVE ACCESS TO ME OF MY MEDICAL FILES (SEE; EXHIBIT "D", ATTACHED); CONFISCATED MY PRESCRIBED ARM/SHOULDER PAIN MEDICATIONS; CONFISCATED MY ANTIBIOTICS ISSUED BY THE DENTIST (DR. SHATTUCK) FOR SEVERE MOUTH INFECTION. DENIED ME ADEQUATE WATER TO DRINK AND/OR WASH MY HANDS AFTER URINATION/DEFACATION, BY NEEDLESSLY SHUTTING OFF MY CELL WATER FOR 6 DAYS. PUT ME INTO SITUATIONS WITH A GAY X-RAY TECH STAFF WHO FONDLED MY PENIS ON TWO (2) SEPARATE OCCASIONS; FAILED TO AFFORD ME MY LISTED WITNESSES,

47. FAILED TO INTERVIEW MS. BUTLER — THEN LIED TO SAY THAT THEY HAD INTERVIEWED HER; FAILED TO TELL ME THE NAMES OF INMATE WITNESSES WHO, BY RESPONDENT'S OWN ADMISSIONS WERE "STANDING OUTSIDE THE HEARING ROOM DOOR, ABLE TO SEE THROUGH THE WIDE GLASS DOOR AND HEAR THE ENTIRE INCIDENT, AND WHO WOULD HAVE DEFENDED ME. STOLE A #20 DOLLAR MONEY ORDER A PASTOR HAD MAILED TO ME; "RIGGED" A TRANSFER OF ME TO SANTA ROSA, JOHNSON'S FORMER WORKPLACE. WROTE ME TWO (2) BOGUS DR's (HUDSON/JOHNSON); * HAD SANTA ROSA STAFF TO TAKE HIS ARM/SHOULDER SLING"; HAD SANTA ROSA TO WRITE A BOGUS DR TOO; TOLD SANTA ROSA STAFF TO INJURE ME;

* THE "JOHNSON, DR.", IS LEON CASE # 2014-CA-3256. "CONSOLIDATION" OF BOTH IS RESPECTFULLY SUGGESTED.

(9)

(EXCERPT
PARAGRAPHS
CONTINUED.)

48. CAUSED SANTA ROSA STAFF TO CONSPIRE TO
   ※ "STICK A MOPHANDLE UP (PETITIONER'S)
   BLACK-COON ASS"; AND HAVE PETITIONER
   SUBJECTED DENIAL OF HIS FOODTRAYS;
   DENIAL OF SHOWERS; DENIAL OF SHAVES;
   DENIAL OF HAIRCUTS; MORE "THEFT" BY
   STAFF, OF NEARLY $100.00 DOLLARS WORTH OF MY
   EDIBLE CANTEEN FOOD ITEMS (AND HYGIENE ITEMS);

49. PLACED PETITIONER IN A ("TELEPHONE BOOTH - SIZED")
   SHOWER FOR NEARLY 8 HOURS, WHEREIN YOUR
   PETITIONER DEFACATED/URINATED UPON HIMSELF
   AND WAS LEFT LIKE THAT OVER 6 MORE HOURS,
   UNABLE TO CLEAN HIMSELF OR CHANGE CLOTHING
   OR GET WATER TO DRINK NOR HIS FOODTRAY;

50. THEREAFTER, PUT IN A CELL ON AN IRON BUNK
   WITH NOTHING FOR NEARLY 4 MORE HOURS,
   WHILE WEARING WET/STINK CLOTHING WHICH
   PETITIONER HAD "WASHED" (AS BEST HE COULD
   WITHOUT SOAP) in the toilet, WHILE USING HIS
   INJURED LEFT ARM SHOULDER (DUE TO STITCHES
   IN HIS RIGHT THUMB HAND); AND BEING RACIALLY
   SLURRED "NIGGER/COON/BLACK COON/NIGGER LUTHER X,"
   ETC.; AND DENIED CARE DUE HIM UNDER THE "AMERICANS
   WITH DISABILITIES ACT OF 1990" (ADA); AND "CM-REVIEW."

51. PETITIONER RESPECTFULLY URGES THAT SUCH
   "ACCOMPANYMENTS", SINGULARLY AND COLLECTIVELY,
   IMPARTED BY RESPONDENT PRISON OFFICIALS,
   RENDER HIS SITUATION AS "atypical" AND
   CONSTITUTES "a significant hardship".

   ※ PLEASE SEE ATTACHED COMPLAINT SENT BY MAIL TO
   "SENATOR GREG EVERS" THEREIN FULLY DETAILING
   THE ATROCITIES COMMITTED AGAINST PETITIONER.

"CM REVIEW", SUBJECTS PETITIONER TO OVER 3 YEARS OF LOCKDOWN.

(10)                                    (END QUOTES)

52. (SEE LEON CASE #'s 2014-CA-3256, 2014-CA-3287 AND 2015-CA-3104).

53. I RESPECTFULLY SEEK THE PRINCIPLES WHICH ARE ASSOCIATED WITH TAKING "JUDICIAL NOTICE" OF EACH CASE CITED WITHIN THIS, COMPLAINT.

54. MOREOVER, I WILL PROVIDE COPIES OF ALL TO THE FLORIDA BAR UPON REQUEST.( I RELUCTANTLY WITHHELD FROM SUBMITTING AN "APPENDIX" OF ALL REFERENCED DOCUMENTS, IN DEFERENCE TO THE CLEAR LANGUAGE OF THE FLORIDA BAR ADMONITION ABOUT VOLUMINOUS CONTENT BEYOND THEIR "25 PAGE LIMIT").

55. THE POINT HERE, (IN FURTHERING THE SANDIN/WILLIAMS/WRIGHT ARGUMENT) IS THAT MY TREATMENT BY PRISON OFFICIALS HAS BEEN PHYSICALLY ABUSIVE, SEXUALLY ABUSIVE, AND MENTALLY ABUSIVE, AS DESCRIBED HEREIN, TO MERIT A COURTS' DETERMINATION THAT WHAT PRISON OFFICIALS HAVE SUBJECTED ME TO IS "ATYPICAL" AND CONSTITUTES "SIGNIFICANT HARDSHIPS" ABSOLUTELY BEYOND THE CONTOURS OF CIVILIZED TREATMENT.

56. THEREIN, K.C. HAGAN'S ATTEMPTS TO PORTRAY THE CASELAW AS "HOLDING" ANY PREMISES TO LEGALLY EFFECTUATE COURTROOM CLOSURE, EVEN IN AN "atypical, significant hardship" CASE AS IS MINE, MUST AND OUGHT TO BE DISREGARDED UNDER ANY VIEW OF THE LAW, AND, MUST BE "EXPLICITLY REJECTED".

57. ANOTHER POINT OVERLOOKED TOO BY K.C. HAGAN, IS THAT SANDIN/WRIGHT/WILLIAMS (AND, HARTLEY-V-FSP, 352 F. APPX. 368 (11ᵗʰ CIRCUIT 2009) HAVE BEEN OVERRULED BY THE U.S. SUPREME COURT'S DECISION IN THE CASE OF PENNSYLVANIA DEPT. OF CORRECTIONS-V-YESKEY, 524 U.S. 206 (1998).

58. YESKEY COMES 3 YEARS after SANDIN, AND YESKEY TOTALLY UNDERMINES THE LOGIC, REASONING, AND HOLDINGS OF SANDIN, AND WRIGHT/WILLIAMS/HARTLEY. INDEED, YESKEY TOTALLY OBLITERATES THE RATIONALE ESPOUSED BY THE POSITIONS CONTENDED BY K.C. HAGAN.

(11)

59. K.C. HAGAN, AS A SIGNIFICANT PART OF HER ARGUMENTS AND LEGAL REASONINGS, EMPHASIZES THAT AS PART OF THE VAGARIES OF PRISON LIFE, IN ADDITION TO BEING PLACED INTO DISCIPLINARY LOCKDOWN —— THERE IS NO LIBERTY INTEREST OR DUE PROCESS RIGHT AS REGARDS THE FACT OF THE FINDING OF GUILT, NOR THE LOSS OF THE "MERE OPPORTUNITY" TO EARN GAINTIME, NOTWITHSTANDING THE POTENTIAL IMPACT OF SUCH GAINTIME UPON EARLIER PRISON RELEASE.

60. IN YESKEY, THAT PRISONER WAS DENIED THE "MERE OPPORTUNITY" AT EARLIER RELEASE FROM PRISON, BY PRISON OFFICIALS DETERMINING YESKEY AS "INELIGIBLE" TO BE PLACED IN A BOOTCAMP-TYPE PROGRAM, THE SUCCESSFUL COMPLETION OF WHICH, "COULD POTENTIALLY" HAVE RESULTED IN YESKEY RELEASE SIX (6) MONTHS SOONER THAN WITHOUT THE PROGRAM.

61. THE YESKEY COURT, NOTWITHSTANDING THE TENUOUS, "IFFY" NATURE OF THE POTENTIALS / POSSIBILITIES OF WHETHER YESKEY "WOULD HAVE" (SUCCESSFULLY ENROLLED-IN, AND SUCCESSFULLY) COMPLETED THE PROGRAM —— FOUND IT DISCRIMINATORY, AND LIKENED THE ("MERE OPPORTUNITY") ELIGIBILITY TO OBTAIN EARLIER RELEASE TO MACHINATIONS "WHICH, AT LEAST THEORETICALLY, benefit the prisoner" (YESKEY AT 210).

62. ERGO, THERE IS NO PRINCIPLED BASIS UPON WHICH TO DISTINGUISH THE DEPRIVATION OF MY ELIGIBILITY OF "THE MERE OPPORTUNITY AT EARLIER PRISON RELEASE" (VIA MY "GOOD CONDUCT-BASED ABILITY TO EARN GAINTIME"), FROM THE (EVEN MORESO "iffy") MERE OPPORTUNITY THAT WAS OTHERWISE ("as tenuously") AVAILABLE TO YESKEY AS "HIS" METHOD OF OBTAINING (POSSIBLE) EARLIER RELEASE FROM PRISON. THUS, UNDER DUE PROCESS AND EQUAL PROTECTION, I AM INDISTINGUISHABLE FROM YESKEY.

(12)

63. THE SUPREME COURT HELD THAT ITS APPLICATION OF YESKEY'S LAW "UNMISTAKEABLY INCLUDES STATE PRISONS AND PRISONERS" (YESKEY, AT 210 (524 U.S. 206 (1998)).

64. CLEARLY, AS PREVIOUSLY STATED, I AM (LIKE YESKEY) PROTECTED BY THE "ADA", AS OF MY MENTAL DISABILITIES, WHICH, AS PREVIOUSLY STATED, ARE WELL-KNOWN TO PRISON STAFF AND, BY DISCLOSURE MONTHS AGO, KNOWN TOO BY K.C. HAGAN.

65. I'M SUPPOSED TO BE PROTECTED FROM ALL THESE BOGUS, MADE-UP, FALSIFIED DR'S, BY PRISON OFFICIALS OF WHOM K.C. HAGAN IS LEGAL COUNSEL TO/FOR.

66. PRISON RULE 33-404.108(1), GOVERNS THE "DISCIPLINE AND CONFINEMENT OF MENTALLY DISORDERED INMATES," THIS RULE SPECIFICALLY MANDATES THAT I (AS AN INMATE "with a diagnosed mental illness") AM TO BE PROVIDED SERVICES BY THE CLINICAL ASSESSMENT OF A PSYCHOLOGIST OR PSYCHIATRIST — "before disciplinary action is taken against any inmate who has a diagnosed mental illness" (SEE RULE, EXHIBIT "B").

67. PRISON STAFF HAVE STATED, AS OF TODAYS DATE, THAT "THE RULE DOES NOT APPLY TO ME." (THE WARDEN HERE AT SANTA ROSA (MR. JIMMY COKER) STATED THIS IN TWO SEPARATE INSTANCES in writing ON 8-7-15; FORMAL GRIEVANCE LOG #1507-119-483 AND #1507-119-484).

68. THESE CONSTITUTE GROSS VIOLATIONS OF THE "ADA"; THE OCCURRENCE THEREOF BEING A CLEAR DUE PROCESS DENIAL, REVIEWABLE BY THE COURTS UPON THE MANDAMUS ACTIONS, AS I HAVE A "CLEAR LEGAL RIGHT" (UNDER THE ADA AND THE ABOVE-LISTED PRISON RULE) TO BE FREE OF THE DISCRIMINATORY ACTS LISTED HEREIN, Purposely invoked by prison officials to harm me, keep me in lockdown, deprive me of access to court and to retaliate against me for filing grievances about their conduct.

69. THESE ACTS TOO, ARE REACHABLE BY THE COURT ON

MANDAMUS REVIEW, AS THE COURT HELD IN
PLYMEL -V- MOORE, 770 So. 2d 242 (1ᴰDCA 2002 )
"... FLORIDA DEPARTMENT OF CORRECTIONS MUST
FOLLOW ITS OWN RULES......"

70. MOREOVER, SINCE MY CASES ALL ALLEGE REPRISALS,
RETALIATION, DISCRIMINATION, HINDERING ACCESS
TO THE GRIEVANCE PROCESS AND TO THE COURTS"—
THESE TOO ARE REMEDIABLE BY MANDAMUS, AS
PRISON OFFICIALS' OWN RULES WHICH MANDATES
"NO HINDERANCES/REPRISALS FOR THE ACTS OF INMATES
UTILIZING THE PRISON GRIEVANCE PROCESS" (33-103, 017 (1)(2) ).

71. OUR VERY OWN ELEVENTH CIRCUIT COURT OF APPEALS
HAS HELD:
"... ALLEGATION BY PRISONER THAT HE WAS DISCIPLINED
BECAUSE HE HAD FILED SEVERAL GRIEVANCES IN
THE PAST, WAS AN ALLEGATION OF PUNISHMENT
FOR EXERCISE OF FIRST AMENDMENT RIGHT TO
FREEDOM OF SPEECH AND RIGHT TO PETITION THE
GOVERNMENT FOR REDRESS OF GRIEVANCES....."
( SEE EXHIBIT"C", WILDBERGER-V-BRACKNELL, 869 F. 2d 1467 (11ᵗʰ CIR. 1989))

72. THUS, THE COURT, SITTING IN "MANDAMUS," CAN EASILY
REACH/REMEDY THESE "DUE PROCESS VIOLATIONS" TOO,
AS PART AND PARCEL OF ITS JURISDICTIONAL DUTIES TO
INVOKE "the complete exercise of its authority."

73. K.C. HAGAN HAS STATED (FLIPPANTLY) IN SEVERAL OF HER
RESPONSES THAT I AM NOT ENTITLED TO "any grievance
procedure" (ACCORD, 2014-CA-3256; 2014-CA-3287).

74. HOWEVER, THE WILDERBERGER CASE, supra, SPECIFICALLY HAS
HELD THAT I CAN (FREESTANDINGLY) FILE "GRIEVANCES":
.....even if inmate had no constitutional right to
a grievance procedure....." (WILDBERGER, EXHIBIT"C").

75. AGAIN, THESE TOO ARE DUE PROCESS-BASED LIBERTY
INTERESTS, WHICH ARE REACHABLE BY THE JUDICIARY
DURING REVIEW OF DR'S VIA MANDAMUS ACTIONS.

(14)

76. K.C. HAGAN'S CLIENTS (PRISON STAFF), AT SANTA ROSA HAVE WRITTEN FOUR (4) DISCIPLINARY REPORTS, PLACING ME IN LOCKDOWN UPON EACH DR, WITHOUT EVER AFFORDING ME OF THE MENTAL HEALTH PREREQUISITES PRIOR TO TAKING DISCIPLINARY ACTIONS; CLEARLY IN DEROGATION OF THE "ADA" AND CHAPTER 33-404.108(1)(2), SEVERELY UPSETTING MY MENTAL HEALTH DISABILITIES.

77. I HAVE (TODAY) EXHAUSTED THE INSTITUTIONAL LEVEL APPEALS TO TWO MORE DR'S, AND, I WILL BE FILING MANDAMUS ACTIONS ON EACH DR, NOTWITHSTANDING THE THREATS BY K.C. HAGAN, AS ALL DR'S RELATE AN ONGOING CONSPIRACY.

78. THERE EXISTS HERE A "CONUNDRUM" OF THE FIRST MAGNITUDE — K.C. HAGAN STATES SHE WILL SEEK TO HAVE "SANCTIONS" IMPOSED UPON ME, "FOR FILING MANDAMUS PETITIONS WITHOUT MY HAVING LOSS GAINTIME."

79. THE "SANCTIONS" CAN INCLUDE THE "loss of gaintime" UNDER CH. 33-601.314(9-32) AND FLORIDA STATUTE 944.279(6).

80. IRONICALLY, IF K.C. HAGAN IS "SUCCESSFUL" IN HAVING ME "SANCTIONED" (WITH BEING PUT IN LOCKDOWN/LOSS OF GAINTIME), I WILL THEN "automatically qualify" (BY K.C. HAGAN'S CRITERION) TO BE ABLE TO file a ("BONA FIDE"?) MANDAMUS, UPON WHICH SHE WOULD NOT DEEM "frivolous"; AND UPON WHICH THE COURTHOUSE DOOR WOULD BE (PER K.C. HAGAN'S LOGIC) "flung open for my entry there unto."

81. K.C. HAGAN HAS ALSO ADVANCED IN WRITING THAT "I HAVE OTHER REMEDIES AT LAW" TO REMEDY A HOST OF ALLEGATIONS SHE, NO DOUBT, ALLUDES TO ME FILING "CIVIL SUITS" IN THE FEDERAL COURTS. I HAVE NOW, AT HER URGING, DECIDED TO FILE THE SUGGESTED LAWSUITS. I AM, BY "CONSPIRACY/R.I.C.O" ACTS, UNLAWFULLY STUCK WAY UP HERE AT THIS RACIST PRISON.

82. I HAVE SIX (6) YEARS REMAINING. MY ENTIRE FOCUS, FROM HENCEFORTH, WILL BE TO SHINE A LIGHT ON THE "TYRANNY" PREVALENT HERE IN NORTH FLORIDA PRISONS. (HOPEFULLY, IN THE MEANWHILE, THE FLORIDA BAR SHOULD "SANCTION" K.C. HAGAN FOR "PERJURY" AS SHOWN HEREIN, BY HER CONSCIOUS LIES).

(15)

83. I ASK TOO THAT K.C. HAGAN BE HELD PERSONALLY RESPONSIBLE WHEN HER CLIENTS/PRISON OFFICIALS GO FORWARD WITH THEIR ULTIMATE INTENTS OF ME, WHICH K.C. HAGAN KNOWS CLEARLY OF, BUT "DEFERS" TO THEM.

84. * REQUEST FOR CLARIFICATION/ DECLARATORY JUDGMENT *
PETITIONER, GERRARD D. JONES, PRISONER # 503034, HEREBY STATES UNDER OATH THAT THERE EXISTS A JUDICIAL NEED FOR "CLARIFICATION AND/OR DECLARATORY JUDGMENT":

A. ✓* AS TO WHETHER THE LAW/RULES/PROCEDURES OF THIS COURT, THE STATE OF FLORIDA CONSTITUTION, AND/OR THE FEDERAL LAWS/CONSTITUTION AFFORDS ME A CLEAR LEGAL RIGHT, AND IMPOSES A CLEAR LEGAL DUTY AS REGARDS ESTABLISHED "MANDAMUS" PROCEDURES SET FORTH IN DOSS-V-DEPT. OF CORRECTIONS, 730 So. 2d 316 (4th DCA 1999) CITING, SHELEY-V-FPC, 703 So. 2d 1202 (1 ST DCA 1997)?
AND;

B. ✓* AS TO WHETHER THE LETTER DATED 8-3-2015, DRAFTED BY KATHLEEN C. HAGAN TRUTHFULLY REPRESENTS THE VIEWPOINTS, AND/OR "adopted rationale" OF THE JUDGES OF LEON COUNTY, FLORIDA, WHICH KATHLEEN C. HAGAN CLAIMS IN WRITING, DEEMS "FRIVOLOUS AND SANCTIONABLE" ANY PETITION FOR MANDAMUS BY THE PRISONER, WHERE THERE WAS "NO LOSS OF GAINTIME", NOTWITHSTANDING THE PRESENCE OF OTHER CONSTITUTIONAL/DUE PROCESS DEPRIVATIONS ASSERTED IN THE PETITION, AND; THE JUDGE OVER IT HAS ISSUED A "SHOW CAUSE ORDER" FINDING PRIMA FACIE MERIT OF THE PETITIONS ALLEGATIONS? AND,

C. ✓* WHETHER CH. 33-404.108 (1)(2) APPLIES TO ME VIA THE ADA?

85. A "MOTION TO APPOINT COUNSEL FOR PETITIONER" IS FILED TOO BY PETITIONER RESPECTFULLY SEEKS APPOINTMENT OF COUNSEL (IN COURT) TO LITIGATE THESE ISSUES OF GREAT PUBLIC IMPORTANCE, AND THE FLORIDA BAR MUST TAKE IT'S ACTIONS.

GERRARD D. JONES (COMPLAINANT)

(16)

JURAT

I, GERRARD D. JONES, HEREBY DECLARE UNDER
PENALTY OF PERJURY OATH THAT I HAVE READ
THE FOREGOING AND ALL FACTS ARE TRUE. THIS
OATH COMPLIES WITH F.S. 92, 525 (2), SIGNED,
SWORN, DATED THIS 12th DAY OF AUGUST 2015.

*By* *Gerrard D. Andre Jones*
GERRARD D'ANDRE JONES
PETITIONER PRO SE

CERTIFICATE OF SERVICE

I CERTIFY AN ORIGINAL AND COPIES OF THIS PETITION/PLEADING
WAS SENT ("MAILBOX RULE") U.S. MAIL ON 8-12-2015, TO:

| (ORIGINAL) | (1 COPY) | (1 COPY) | (1 COPY) |
|---|---|---|---|
| CLERK OF COURT (RM#100) | KATHLEEN C. HAGAN | "CHIEF JUDGE" | THE FLORIDA BAR |
| (% JUDGE REYNOLDS III) | ASSISTANT ATT. GENERAL | LEON COUNTY | 651 E. JEFFERSON STREET. |
| 301 S. MONROE ST. | THE CAPITOL PL-01 | 301 S. MONROE ST. | TALL., FL. 32399-2300 |
| TALL., FL. 32301 | TALL. FL. 32399-1050 | TALL, FL. 32301 | (1-866-352-0707 PH.#) |
| | ((850) 414-3300 PH#) | | (W/ ATTACHED BAR COMPLAINT) * |

| (1 COPY) | (1 COPY) | (1 COPY) |
|---|---|---|
| FLORIDA SENATOR | MR. WAYNE HODRICK | PENSACOLA NEWS JOURNAL NEWSPAPER |
| MR. GREG EVERS | (PRESIDENT) | ATTN: INVESTIGATIVE REPORTERS |
| 209 E. ZARAGOZA ST. | N.A.A.C.P. | 2 NORTH PALAFOX ST. |
| PENSACOLA, FL., | (SANTA ROSA CHAPTER) | PENSACOLA, FL. 32502 |
| 32502-6048 | P.O. BOX 17; MILTON FL. 32572 | ((850) 435-8500 PH#.) |
| (850) 595-0213) PH.# | ((850) 623-4014) PH.# | |

| (1 COPY) | |
|---|---|
| D.O.C. GENERAL COUNSEL | |
| JENNIFER PARKER | *By* *Gerrard D. Jones* |
| 501 S. CALHOUN ST. | GERRARD D. JONES #503034 |
| TALL., FL. 32399-2500 | SANTA ROSA ANNEX (J2105/LOCKDOWN) |
| | 5850 E. MILTON ROAD |
| | MILTON, FLORIDA 32583 |
| (17) | ((850) 983-5800 - PRISON TEL.#) |

LEON COUNTY, FLORIDA

(IN RE: COMPLAINT OF GERRARD D. JONES)
        AGAINST ATTORNEY K.C. HAGAN)

(REGARDING)
    GERRARD D. JONES,                    CASE # 2015-CA-3104
        PETITIONER,                       HON. JUDGE GEORGE C. REYNOLDS III
    - V-                                  ("COLLATERAL CRIMINAL LITIGATION").

K.L. MACK, AND
FLORIDA DEPT. OF CORRECTIONS       /

            * APPENDIX *

            LIST OF EXHIBITS

COMPOSITE EXHIBIT "A" — COPY OF LETTER FROM K.C. HAGAN.
                    A-1 — COPY OF WRIGHT-V-MᶜDONOUGH
                    A-2 — WRIGHT-V-MᶜDONOUGH, CONTINUED.
                    A-3 — COPY OF WILLIAMS (CITING Sandin).

    EXHIBIT "B" — COPY OF RULE 33-404.108
                    GOVERNING MENTALLY-DISORDERED
                    FLORIDA PRISON INMATES.

    EXHIBIT "C" — COPY OF WILDBERGER-V-BRACKNELL.

        BY: Gerrard D. Jones
            GERRARD D. JONES # 503034
            SANTA ROSA ANNEX PRISON
            5850 E. MILTON ROAD
            MILTON, FLORIDA 32583

            (COMPLAINANT PRO SE)

            ((18)).



**PAM BONDI**
**ATTORNEY GENERAL**
**STATE OF FLORIDA**

OFFICE OF THE ATTORNEY GENERAL
Corrections Litigation Bureau

KATHLEEN C. HAGAN
Assistant Attorney General

PL-01 The Capitol
Tallahassee, FL 32399-1050
Phone (850) 414-3300       Fax (850) 488-4872
*http://www.myfloridalegal.com*

August 3, 2015

Gerrard D. Jones, DC# 503034
Santa Rosa Correctional Institution Annex
5850 East Milton Rd.
Milton, Florida 32583-7914

*COMPOSITE EXHIBIT "A"*
*⋆ ( 4 PAGES, INCLUDING THE*
*( WRIGHT AND WILLIAMS CASES )*

Re:    Gerrard D. Jones, DC# 503034 v. Department of Corrections
       Case No.: 2015-CA-1304

Dear Mr. Jones:

        This is a letter to inform you, if you have not already become aware, that the First District Court of Appeal has issued a written opinion in Williams v. Tucker, 87 So. 3d 1270 (Fla. 1st DCA 2012) expressly adopting the rationale in Sandin v. Connor, 515 U.S. 478 (1995) and holding that a prisoner subjected only to disciplinary confinement and forfeiting no gain time lacks the requisite liberty interest necessary to challenge a disciplinary report.    The opinion supplements the First District Court of Appeal's previous opinion in Wright v. McDonough, 958 So.2d 1132 (Fla. 1st DCA 2007), which cited Sandin for the proposition that inmates have no liberty interest in the ability to earn gain time.    Furthermore, the Department of Corrections has been making this argument for quite some time now, and the Second Judicial Circuit in and for Leon County has adopted this rationale as it pertains to petitions challenging prison disciplinary actions. ⋆

        I am writing to give you the opportunity to voluntarily dismiss this case so as to conserve the resources of both the Court and the Department. If you do not voluntarily dismiss this case, and instead decide to waste the State's time and resources with a case that is without merit under controlling precedent, then the Department will seek sanctions against you. These sanctions will include, but are not limited to, asking that the Court issue an order finding your petition frivolous and directing the Office of the Clerk of Court to forward the order to the Department of Corrections for consideration of sanctions, pursuant to section 944.279 (1), Florida Statutes (2014).   This means that you could receive a DR for violating the Rules of Prohibited Conduct Rule 33-601.314 (9-32), F.A.C., bringing a frivolous suit.

Sincerely,

Kathleen C. Hagan, Esq.

Encl: Opinions from Williams v. Tucker and Wright v. McDonough

*(19)*

Westlaw.

$A-1$

958 So.2d 1132, 32 Fla. L. Weekly D1580
**(Cite as: 958 So.2d 1132)**

**C**

District Court of Appeal of Florida,
First District.
Garrett WRIGHT, Petitioner,
v.
James R. McDONOUGH, Secretary, Florida Department of Corrections, Respondent.

No. 1D06-5778.
June 27, 2007.

**Background:** Inmate filed petition for writ of mandamus in the Circuit Court challenging prison disciplinary proceeding which adversely affected his ability to earn gain-time. The Circuit Court denied petition and imposed lien on inmate's trust account to recover appellate filing costs. Inmate filed petition for writ of certiorari in the District Court of Appeal.

**Holdings:** The District Court of Appeal held that:
(1) petition for writ of certiorari challenging the denial of inmate's petition for writ of mandamus was properly denied, but
(2) Circuit Court departed from the essential requirements of the law by placing a lien on mandamus petitioner's inmate trust account.

Petition denied in part and granted in part.

West Headnotes

**[1] Mandamus 250 ⟲188**

250 Mandamus
 250III Jurisdiction, Proceedings, and Relief
  250k188 k. Certiorari to Review Proceedings.
Most Cited Cases

Inmate's petition for writ of certiorari challenging the denial of his petition for writ of mandamus was properly denied, where petition challenged a prison disciplinary proceeding.

**[2] Mandamus 250 ⟲190**

250 Mandamus
 250III Jurisdiction, Proceedings, and Relief
  250k190 k. Costs. Most Cited Cases

Circuit Court departed from the essential requirements of the law by placing a lien on mandamus petitioner's inmate trust account to pay for court costs incurred by filing the mandamus petition, warranting grant of inmate's petition for writ of certiorari challenging the imposition of the lien and the quashing of the lien; inmate's challenge had the potential of affecting the time he would spend in prison.

**\*1133** Garrett Wright, pro se, Petitioner.

Bill McCollum, Attorney General, and Linda Horton Dodson, Assistant Attorney General, Tallahassee, for Respondent.

PER CURIAM.
 [1] In this petition for writ of certiorari, Petitioner challenges the circuit court's denial of his petition for writ of mandamus, and the imposition of a lien placed on his inmate trust account. The petition for writ of mandamus challenged a disciplinary proceeding, which adversely affected Petitioner's ability to earn gain-time. Based on our review of the record, we conclude that the circuit court properly denied the petition for writ of mandamus. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Consequently, the petition for writ of certiorari challenging the denial of the petition for writ of mandamus is DENIED.

 [2] However, Petitioner's mandamus petition challenged the loss of his ability to earn gain-time. Because his challenge had the potential of affecting the time he will spend in prison, the circuit court departed from the essential requirements of law by placing a lien on his inmate trust account to pay for court costs incurred by filing the mandamus petition. *Schmidt v. Crusoe,* 878 So.2d 361 (Fla.2003); *Yasir v. McDonough,* 31 Fla. L. Weekly D1459, --- So.2d ----, 2006 WL 1419271 (Fla. 1st DCA May 25, 2006). The petition for writ of certiorari challenging the imposi-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(20)

958 So.2d 1132, 32 Fla. L. Weekly D1580
**(Cite as: 958 So.2d 1132)**

$A$-2

tion of a lien on Petitioner's inmate account is
GRANTED, and the order imposing the lien is
QUASHED.

DAVIS and POLSTON, JJ., and LAWRENCE, Jr., L.
ARTHUR, Senior Judge, concur.

Fla.App. 1 Dist.,2007.
Wright v. McDonough
958 So.2d 1132, 32 Fla. L. Weekly D1580

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*(21)*

87 So.3d 1270, 37 Fla. L. Weekly D1245
**(Cite as: 87 So.3d 1270)**

**C**

District Court of Appeal of Florida,
First District.
Gary WILLIAMS, Petitioner,
v.
Kenneth S. TUCKER, Secretary, Florida Department
of Corrections, Respondent.

No. 1D10–3257.
May 24, 2012.

Petition for Writ of Certiorari.
Gary Williams, pro se, Petitioner.

**\*1271** Pamela Jo Bondi, Attorney General, and C.
Ian Garland, Assistant Attorney General, Tallahassee,
for Respondent.

PER CURIAM.

Gary Williams, an inmate serving a parole-
eligible life sentence, appeals the denial of his peti-
tion for mandamus challenging a disciplinary report
that resulted in him being placed in disciplinary con-
finement for 60 days. We treat the appeal as a peti-
tion invoking our certiorari jurisdiction, <sup>FN*</sup> and deny
the petition on the merits because the trial court did
not depart from the essential requirements of law in
determining that Williams failed to demonstrate any
liberty interest implicating the protections of the Due
Process Clause. *See Sandin v. Conner,* 515 U.S. 472,
486–87, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)
(holding that 30–day disciplinary confinement "did
not present the type of atypical, significant depriva-
tion in which a State might conceivably create a lib-
erty interest," and further stating that "[t]he chance
that a finding of misconduct will alter the balance [in
consideration of parole] is simply too attenuated to
invoke the procedural guarantees of the Due Process
Clause").

> FN* *Sheley v. Fla. Parole Comm'n,* 703
> So.2d 1202 (Fla. 1st DCA 1997), *approved
> by* 720 So.2d 216 (Fla.1998).

DENIED.

DAVIS, WETHERELL, and SWANSON, JJ., con-
cur.

Fla.App. 1 Dist.,2012.
Williams v. Tucker
87 So.3d 1270, 37 Fla. L. Weekly D1245

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*16282 Rule 33-404.108, F.A.C.**

## WEST'S FLORIDA ADMINISTRATIVE CODE TITLE 33. DEPARTMENT OF CORRECTIONS CHAPTER 33-404. MENTAL HEALTH SERVICES

*Current with amendments available through December 29, 2014.*

### 33-404.108. Discipline and Confinement of Mentally Disordered Inmates.

Inmates with a diagnosed mental illness shall be subject to the provisions of Rules 33-601.301-.314, F.A.C., Inmate Discipline, except as noted in the following sections.

(1) Mental health staff are authorized to provide written or verbal input to the disciplinary team before disciplinary action is taken against any inmate who has a diagnosed mental illness, mental retardation or who is otherwise cognitively impaired. The input shall be provided by either a psychologist or psychiatrist and shall be limited to description of the role, if any, that mental impairment may have played in the behavior in question. Written input by either a psychologist or psychiatrist shall be provided for inmates who are patients in isolation management, transitional care, crisis stabilization care, or in a corrections mental health treatment facility. The input shall be limited to whether the patient's mental illness, mental retardation or cognitive impairment may have contributed to the alleged disciplinary offense and, if so, a recommendation for disposition or sanction options or alternative actions.

(2) The results of the clinical assessment shall be communicated to classification and documented in the health record by a psychologist or psychiatrist. The disciplinary team shall determine the appropriate discipline, including confinement, in accordance with Rules 33-601.301-.314, F.A.C. Any such confinement shall be performed within the inpatient setting, in accord with unit operating procedures and the

individualized services plan. Documentation of all such incidents shall also be considered as part of the ongoing assessment of risk for violence by the risk assessment team as described in subsection (4) of this rule.

\*16283 (3) When inmates are admitted to transitional care, crisis stabilization care, or a corrections mental health treatment facility, any prior confinement or close management status shall be suspended until the inmate is discharged from the specialized care setting. Security restraints shall be applied when inmates admitted to transitional care, crisis stabilization care, or a corrections mental health facility from maximum management or close management status I and II are out of their cells or other secure areas such as exercise yards, shower areas or holding cells.

(4) Within 72 hours of an inmate's admission to transitional care, crisis stabilization care, or a corrections mental health treatment facility, an assessment of risk for violence shall be completed by a risk assessment team. The risk assessment team shall consist of a psychologist or psychiatrist and a staff member from security and classification. This risk assessment shall be the basis for recommendations for restrictions on the inmate's movement, housing program participation and clinical activities while the inmate is in an inpatient unit. The assessment of risk for violent behavior shall include a review of the health and institutional record, the inmate's adjustment to incarceration, and the inmate's disciplinary or confinement status at the time of the referral for inpatient treatment. Restrictions shall be determined based on staff and inmate safety, and institutional security, and shall be documented in the health record.

(5) The risk assessment shall be reviewed by a risk assessment team within 14 working days of the initial risk assessment and at least every 90 days thereafter, to determine the appropriateness of restrictions on housing, movement, and activities. Modifications shall be documented in the inmate's health record. Disagreement among the risk assessment team related to the level of risk presented by the inmate, or the determination of restrictions to be recommended for inclusion in

---

the individualized service plan shall be referred to the warden for resolution. The warden is authorized to contact the regional mental health consultant and director of mental health services or his/her designee in central office for recommendations when needed.

(6) An inmate transferred to an inpatient setting from protective management may still need protection while in a crisis stabilization,

transitional care unit, or a corrections mental health treatment facility. Protective management status or requests shall be evaluated with written or verbal input from the clinical staff, in accordance with Rule 33-602.220 and Rule 33-602.221, F.A.C., as applicable.

*Adopted May 27, 1997; Amended July 9, 1998; Transferred from 33-40.008. Amended July 9, 2012.*

*Authority: 944.09, 945.49 FS. Law Implemented 944.09, 945.49 FS.*

EXHIBIT "B" COPY OF RULE
(33-404.108(9)(B))
(29)

869 F.2d 1467, Wildberger v. Bracknell, (C.A.11 (Ala.) 1989)     Page 1

\*1467 869 F.2d 1467

United States Court of Appeals,
Eleventh Circuit.

Leon WILDBERGER, Plaintiff-
Appellant,
v.
Sgt. David BRACKNELL, Lt. Robert
Simmons, Steve Hicks, CO II, et al.,
Defendants-Appellees.

No. 88-7373

Non-Argument Calendar.
April 14, 1989.

Prison inmate brought action challenging grievance proceeding and segregated confinement. The United States District Court for the Northern District of Alabama, No. CV87-AR-1125, William M. Acker, Jr., J., granted summary judgment in favor of defendants, and inmate appealed. The Court of Appeals held that inmate's allegation that he had been disciplined as a result of filing several grievances asserted a claim for punishment due to exercise of First Amendment right of freedom of speech and right to petition the government for redress of grievances.

Reversed and remanded.

West Headnotes

[1]  Constitutional Law ⟨key⟩3851

92 ----
92XXVII Due Process
92XXVII(A) In General
92k3848 Relationship to Other Constitutional Provisions; Incorporation
92k3851 First Amendment

(Formerly 92k274.1(1))

Provisions of the First Amendment were incorporated with the provisions of the Fourteenth Amendment to become applicable to the states. U.S.C.A. Const.Amends. 1, 14.

[2]  Civil Rights ⟨key⟩1395(7)

83 ----
78III Federal Remedies in General
78k1392 Pleading
78k1395 Particular Causes of Action

78k1395(7) Prisons and Jails; Probation and Parole.

(Formerly 78k235(7), 78k13.12(6))

Allegation by prisoner that he was disciplined because he had filed several grievances in the past was an allegation of punishment for exercise of First Amendment right to freedom of speech and right to petition the government for a redress of grievances, even if inmate had no constitutional right to a grievance procedure. U.S.C.A. Const.Amends. 1, 14.

Harry A. Lyles, Gen. Counsel, Alabama Dept. of Corrections Legal Div., John T. Harmon, Montgomery, Ala., for defendants-appellees.

Appeal from the United States District Court for the Northern District of Alabama.

Before TJOFLAT and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

This is an appeal from the dismissal by the trial court of appellant's 42 U.S.C. § 1983 action against Alabama Department of Corrections officials, Sgt. Bracknell, Lt. Simmons, Associate Warden DeLoach and correctional officers Hicks and Twyman.

Appellant's principal contentions were that he had been denied a federal constitutional right, because the defendants violated the grievance procedures established by the State Department of Corrections, and because he had been disciplined by being placed in segregation in retaliation for his having filed several grievances under the state's grievance procedures. He also alleged that he had been personally assaulted by one Lt. Moore, whom he did not name as a defendant. In addition, the complaint challenged the fairness and impartiality of the disciplinary committee that had acted on his grievance. His charge in this respect is principally due to the fact that two members of the grievance committee were in supervisory positions over the persons charged with responsibility for the alleged illegal conduct; plaintiff also claimed that the chairman of the committee unfairly denied plaintiff's request to call two additional witnesses at the disciplinary hearing, which restricted his ability to establish his innocence.

The trial court adopted the report and recommendation of the magistrate, holding that the petition should be dismissed on the defendants' motion

© 2014 Thomson Reuters. No claim to original U.S. Govt. works.

---

869 F.2d 1467, Wildberger v. Bracknell, (C.A.11 (Ala.) 1989)     Page 2

for summary judgment. The magistrate concluded that the violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution. \*1468. The recommendation also held that since there was no right to a grievance procedure under the Constitution, a claim of retaliation for filing a grievance also did not state a constitutional claim. As to the claim for the personal assault, the magistrate found that the suit was properly dismissed, since Moore had not been made a defendant and had received no notice of the lawsuit. The magistrate's recommendation found that, although the claim of lack of a fair and impartial disciplinary committee implicated federal constitutional rights, the minimum requirements of due process were met under the standard stated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

We conclude that the trial court erred in one respect in granting the motion for summary judgment.

*Claim of Retaliation.*

[1][2] As stated above, Wildberger averred that his constitutional rights had been violated since, as he alleged, he had been disciplined because he had filed several grievances in the past. He claims this is a clear case of an inmate being punished for exercising his First Amendment right to "freedom of speech" and his right "to petition the government for a redress of grievances." (FN1)

This Court has decided a number of cases dealing with quite similar constitutional issues. In *Wright v. Newsome*, 795 F.2d 964 (11th Cir.1986), we said:

Wright also sufficiently alleged facts bringing actions that might not otherwise be offensive to the Constitution ... within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances. This type of retaliation violates both the inmate's right of access to the courts, *Hooks v. Kelley*, 463 F.2d 1210 (5th Cir.1972), and the inmate's First Amendment rights. *See Bridges v. Russell*, 757 F.2d

1155 (11th Cir.1985). The district court erred in dismissing the retaliation claim for failure to state a claim for which relief can be granted.

795 F.2d at 968 (emphasis supplied). In *Bridges v. Russell*, 757 F.2d 1155 (11th Cir.1985), this Court said:

Critical issues of fact remain to be decided in this case. The appellant has alleged that he was transferred because: (1) he filed a grievance against his work supervisor alleging racial discrimination in the assignment of work tasks; (2) he actively encouraged other inmates to protest this treatment by signing a petition; and (3) he prepared, upon request, a similar grievance for another prisoner to sign.

*Id.* at 1157.

It seems clear that if appellant is able to establish that his discipline was the result of his having filed a grievance concerning the conditions of his imprisonment, he will have raised a constitutional issue, under the authority of these cases.

CONCLUSION

Accordingly, we must REVERSE the trial court's judgment dismissing the complaint and REMAND for further consideration.

(FN1.) Amendment 1 of the United States Constitution provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The provisions of this Amendment were, of course, incorporated within the provisions of the Fourteenth Amendment to become applicable to the states. *See. e.g., Wallace v. Jaffree*, 472 U.S. 38, 48-49, 105 S.Ct. 2479, 2485-86, 86 L.Ed.2d 29 (1985).

© 2014 Thomson Reuters. No claim to original U.S. Govt. works.

EXHIBIT "C"

(24)