## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

GERRARD D. JONES,

      Plaintiff,

v.                                 Case No.  3:18-cv-155-LC/MJF

SCHWARZ, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Gerrard D. Jones, a prisoner proceeding *pro se*, brought this action under 42 U.S.C. § 1983, claiming that five correctional officers violated his constitutional rights. Specifically, he claims that the officers used excessive force in violation of the Eighth Amendment and/or failed to protect him from excessive force and that these officers retaliated against him in violation of the First Amendment. (Doc. 20 at 17). Defendants move for partial summary judgment. (Doc. 77). Plaintiff filed a response and evidentiary documents in opposition. (Doc. 95). The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). For the reasons set forth below, Defendants' motion should be granted in part and denied in part.

# I. BACKGROUND

## A.   OVERVIEW OF PLAINTIFF'S CLAIMS

In August 2015, the Florida Department of Corrections ("FDC") confined Plaintiff Gerrard Jones ("Jones") at the Santa Rosa Correctional Institution Annex. Jones alleges that on August 18, 2015, five Defendants—Schwarz, Goldhagen, Denmon, Beaudry, and Pogue—used excessive force on him and failed to protect Jones from the excessive use of force. Specifically, Jones alleges that these Defendants threw him to the ground; choked him; "hog-tied" him; tried to break his hands, wrists, and ankles; and inserted a metal object into his rectum. (Doc. 20 at 9-11). Jones alleges that, as a result of Defendants' use of excessive force, he suffered several injuries, including broken fingers on both hands, a popped blood vessel in his right hand, nerve damage in his right hand and wrist, a cut on his buttocks, as well as injuries to his rectum, re-dislocation of his shoulder, and scarring on his wrist and ankles.

Jones also raises a retaliation claim under the First Amendment. Jones alleges the following acts of retaliation: the excessive use of force, the denial of medical care, and Goldhagen's act of filing two false disciplinary reports. Jones claims that these actions were retaliation for his filing a bar complaint against former Florida

Assistant Attorney General Katherine Hagan ("Hagan") and filing two grievances against Santa Rosa Correctional Officer W.J. Strain. (*Id.* at 14).[1]

## B.   **Background**

The following facts are drawn from the evidence in the summary judgment record (Doc. 77), Jones's verified amended complaint (Doc. 20), and Jones's sworn response in opposition to the motion for summary judgment (Doc. 95).[2] Whenever the parties offer conflicting accounts of relevant events, the undersigned "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Thus, matters stated as "facts" for purposes of the undersigned's

---

[1] In moving for summary judgment, Defendants addressed a claim that Jones did not properly raise in his fourth amended complaint: deliberate indifference to a serious medical need. Plaintiff merely alleged that "[he] was taken for a 'post-use-of-force' examination . . . but, Schwarz and Goldhagen stayed in the examination room and Schwarz told the nurses to 'do the minimum,' and the nurses complied and 'did the minimum.'") (Doc. 20 at 12). Insofar as Plaintiff concedes that he received the minimum care required and does not identify additional treatment that he should have been provided, Plaintiff clearly did not state a claim of deliberate indifference to a serious medical need.

[2] "A *pro se* plaintiff's complaint, . . . if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence." *Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014) (*citing Murrell v. Bennett*, 615 F.2d 306, 310 n.5 (5th Cir. 1980), and quoting Fed. R. Civ. P. 56(c)(4)) (footnote omitted).

consideration of the summary judgment motion may not be the actual facts. *Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

Prior to the alleged use of excessive force on August 18, 2015, Jones filed two grievances against an FDC correctional officer, W.J. Strain, who is not a defendant in this case. (*See* Doc. 77-1 at 1-2). Jones also filed a complaint with the Florida Bar against Hagan, who represented the FDC in civil actions brought by Jones against the FDC. (Doc. 77-5 at 2-27).

On August 18, 2015, at approximately 7:00 a.m., W.J. Strain issued a disciplinary report, log number 135-151303, which stated that Jones had filed false grievances in violation of Rule 33-602.314(9-10) of the Florida Administrative Code, which prohibits lying to staff members. (Doc. 77-1). The disciplinary report ordered that the FDC place Jones in administrative confinement pending disciplinary team action.[3] (*Id.*).

At approximately 8:31 a.m., on August 18, 2015, Goldhagen came to Jones's cell to escort Jones to the medical department for a pre-confinement physical pending his placement in administrative confinement. (Doc. 20 at 7; Doc. 77-2 at 1; Doc. 77-3 at 1). Goldhagen directed Jones to turn around and submit to hand

---

[3] On August 25, 2015, the disciplinary panel found Jones guilty of this disciplinary report. (Doc. 77-1 at 2). As a result, Jones lost 60 days of gain time. (*Id.*).

restraints. Jones does not dispute that initially he refused to have his hands restrained behind his back. The parties' accounts differ as to the events that followed.

According to Jones, he informed Goldhagen that he possessed a medical pass which authorized him to have his hands restrained in front of his body. (Doc. 20 at 7). Jones states that he offered to be "cuffed up" in front, but Goldhagen would not listen to Jones. (*Id.*). Goldhagen then reported via his radio that Jones refused to submit to hand restraints. (*Id.*).

Defendant Schwarz then arrived at Jones's cell, and Jones again attempted to explain that, due to a shoulder injury, FDC medical staff had issued a pass that allowed him to be cuffed with his hands in front of his body. (*Id.* at 8). Schwarz directed Jones to turn around and submit to hand restraints. (*Id.*). In response, Jones extended his arms to be restrained in front of his body. Meanwhile, Goldhagen had put a pair of handcuffs in his right hand "like brass knuckles." Goldhagen and Schwarz briefly stepped away from the cell to confer. Schwarz then loudly told Goldhagen, "Do whatever you need to cuff him in back." (*Id.*). Schwarz remained in or near the entry of Jones's cell. (Doc. 95 at 9).

Goldhagen, Pogue, Beaudry, and Denmon entered Jones's cell, and Goldhagen attempted to hit Jones in the face multiple times. (Doc. 20 at 9). As a result, Jones agreed to submit to hand restraints behind his back. Once Goldhagen

placed the handcuffs on Jones, Goldhagen placed Jones in a chokehold and yelled that Jones was not a lawyer.[4] Goldhagen told Jones that he had "pissed a real lawyer off." (*Id.*). Goldhagen then instructed Pogue, Beaudy, and Denmon to hold Jones's legs, which caused Jones to fall to the floor. Goldhagen pulled Jones's neck backwards as though to "hog tie" his neck to his ankles. (*Id.* at 10). Jones asserts that he lost consciousness for an unspecified period. When he regained consciousness, Goldhagen inserted a metal object into Jones's rectum, and the other officers twisted Jones's wrists, feet, and ankles as though attempting to break his bones.[5] Finally, Schwarz told the officers "that's enough," and Defendants' use of force ceased. (Doc. 20 at 10).

Defendants' version of events differs substantially from Jones's narrative. According to Defendants, after refusing several commands to submit to restraints, Jones orally agreed to so submit. (Doc. 77-2; Doc. 77-3). Defendants Denmon, Pogue, Beaudry, and Goldhagen entered Jones's cell. As the officers entered the cell,

---

[4] Jones's prison nickname is "Lawyer boy." (Doc. 20 at 9).

[5] Because Jones's abdomen was on the floor, he was unable to see which Defendants were pulling and twisting his writs and feet. Jones, however, asserts that each of the Defendants were in or near the cell during the use of force incident. (Doc. 20 at 10; Doc. 95 at 9). Thus, to the extent any Defendant did not use force on Jones, Jones asserts that such Defendants would still be liable for failing to protect him from the unlawful force used by other Defendants. (Doc. 20 at 16).

Jones stated, "Let's go motherfuckers" and attempted to strike Goldhagen's face with a closed fist. (Doc. 77-3). Goldhagen, Denmon, Pogue, and Beaudry then used force in defense of Goldhagen. (*Id.*). Defendants assert that they used only that force necessary to restrain Jones and, once they had restrained Jones, they ceased using force. (*Id.*).

The parties agree that after Defendants' use of force, Defendants lifted Jones from the floor and escorted him to the medical department for a post-use-of-force evaluation and pre-confinement physical. FDC officials used a handheld camera to record their interactions with Jones after the use of force. (Doc. 77, Exhibit D). Plaintiff's hands were restrained behind his back, and throughout much of the video, Jones's hands are visible from a distance. (*Id.*).

At approximately 8:49 a.m., Jones entered the medical exam room for his post-use-of-force examination. (Doc. 77, Exhibit D at 8:49 a.m.). Jones's medical examination took approximately ten minutes. (*Id.* at 8:49-8:57). The video recording indicates that correctional officers, including Schwarz, remained with Jones in the exam room during his post-use-of-force examination. (*Id.*). Because the camera that was recording the examination was located outside the examination room, the parties' conversation generally cannot be heard on the recording.

Jones asserts that Schwarz directed the nurses to "do the minimum," and the nurses allegedly complied and in fact did only "the minimum." (Doc. 20 at 12). During the medical examination, Jones complained of pain in his hands. (Doc. 77-4 at 4). In the video footage, medical staff can be seen examining Jones's hands. (Doc. 77, Exhibit D at 8:53-8:56). The medical records state:  no "injuries noted at current time, [inmate's] hands are not deformed, no redness, no swelling, [and capillary] refill less than 5 seconds." (Doc. 77-4 at 4). The video footage also shows medical personnel taking Jones's vital signs. Except for his blood pressure, which was slightly elevated, Jones's vital signs were within a normal range. (Doc. 77-4). Because Jones's hands were restrained behind his back and not visible, it is unclear how thorough medical personnel actually examined his hands. (Doc. 77, Exhibit D at 8:53-8:56).

In his verified complaint, Jones asserts that he attempted to inform the examining nurse that Defendants had inserted a metal item into his rectum and had cut him, but the officers directed the nurse to ignore his complaints and Schwarz purportedly told Jones "You're fine right now." (Doc. 20 at 12; Doc. 95 at 13 (citing Doc. 77, Exhibit D at 08:51a.m.)). The medical records from the post-use-of-force examination do not relate that Jones made these allegations. (Doc. 77-4 at 2, 4).

In the days that followed Defendants' use of force, Jones returned to the medical department at least three times. (Doc. 77-4 at 6-10). During each such visit, Jones alleged that a metal item had been stuck in his rectum and cut his buttocks, which resulted in pain and bleeding. But the medical records reflect that on August 21, August 24, and August 26, 2015, medical personnel found no evidence of active bleeding or trauma to Jones's rectum. (Doc. 77-4 at 6-10).

Jones's medical records do reflect, however, that he suffered injuries to his hands. Specifically, on August 21, 2015, only three days after Defendants used force on Jones, medical personnel observed that Jones's hands and fingers were "swollen." (Doc. 77-4 at 8-12). Similarly, on August 26, 2015, medical personnel observed that Jones's hands had "swollen joints especially right ring finger and pain in right ring finger, right pinky, and left index finger." (Doc. 77-4 at 10). Medical personnel indicated that x-ray images of Jones's fingers should be obtained, but the record does not indicate that this ever occurred.

Once the post-use-of-force examination was finished, FDC personnel escorted Jones to a shower, strip-searched him, and placed him in an administrative cell. (Doc. 77, Exhibit D at 8:57-9:04).

As a result of the incident on August 18, 2015, Goldhagen issued Jones two disciplinary reports. In the first disciplinary report, the FDC charged Jones with a

violation of Rule 33-602.314(6-1) of the Florida Administrative Code, which prohibits disobeying an order. (Doc. 77-2). The disciplinary panel found Jones guilty of that disciplinary report. In the second disciplinary report, the FDC charged Jones with a violation of Rule 33-602.314(1-15) of the Florida Administrative Code, which prohibits battery and attempted battery of a correctional officer. (Doc. 77-3). The disciplinary panel also found Jones guilty of this disciplinary report and imposed a sanction of sixty days of disciplinary confinement and forfeiture of 364 days of gain time. (*Id.*).

## II. STANDARD

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248.

When addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 251-52). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Id.* at 252. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006).

## III. DISCUSSION

### A. <u>Excessive force and Failure to Protect Claims</u>

#### 1. *Excessive Force Claim*

Defendants argue that Jones's excessive force claim is in part barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny. Specifically, Defendants argue that Jones's allegations that the use of force was "unjustified", or more properly that

it was instigated for an improper motive, is barred by *Heck*.[6]  Additionally, Schwarz argues that Jones's excessive force claim with respect to Schwarz fails because Jones did not allege that Schwarz personally used any force but only that Schwarz "authorized" the use of force. (Doc. 20).

In *Heck v. Humphrey*, the Supreme Court "sought to 'avoid the problem inherent in two potentially conflicting resolutions arising out of the same set of events by foreclosing collateral attacks on convictions through the vehicle of a § 1983 suit." *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1192 (11th Cir. 2020)*. In *Heck*, the Supreme Court held that a district court must consider whether a judgment in favor of the plaintiff "would necessarily imply the invalidity of his conviction" or sentence. 512 U.S. at 487. If so, the complaint "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

The Supreme Court extended this holding to claims brought by prisoners challenging prison disciplinary actions, even when the prisoner does not explicitly seek to restore his prison gain time or to otherwise shorten his sentence. *Edwards v.*

---

[6] Defendants concede that there is a genuine dispute as to whether the force used was the minimal force necessary. (Doc. 77 at 10). Therefore, Goldhagen, Pogue, Beaudry, and Denmon do not move for summary judgment as to this aspect of Jones's excessive use of force claim and concede that it should "survive summary judgment." (*Id.* at 14).

*Balisok*, 520 U.S. 641, 648 (1997). Thus, "[t]he *Heck* rule, as extended by *Edwards v. Balisok*, strips a district court of jurisdiction in a § 1983 suit brought by an imprisoned plaintiff 'if a judgment in favor of the plaintiff would necessarily imply the invalidity' of a punishment that 'deprive[d] him of good-time-credits.'" *Dixon v. Hodges*, 887 F.3d 1235, 1237 (11th Cir. 2018) (quoting *Edwards*, 520 U.S. at 643). But "*Heck* bars a § 1983 suit only when it is a 'logical necessity' that judgment for the plaintiff in that suit would contradict the existing punishment." *Dixon*, 887 F.3d at 1238; *see Muhammad v. Close*, 540 U.S. 749, 754-55 (2004) (rejecting the view that *Heck* applies to all suits challenging prisoner disciplinary proceedings). In other words, "[s]o long as there would still exist a construction of the facts that would allow the underlying [punishment] to stand, a section 1983 suit may proceed." *Dixon*, 887 F.3d at 1238 (citation and quotations omitted); *Sconiers*, 946 F.3d at 1269.

Additionally, *Heck* may bar a prisoner's suit "if his § 1983 complaint makes specific factual allegations that are inconsistent with the facts upon which his [punishment was] based." *Dixon*, 887 F.3d at 1238 (citing *Dyer v. Lee*, 488 F.3d 876, 883 n.9 (11th Cir. 2007)). This "gloss on *Heck*" applies only in a narrow category of case "where the allegation in the § 1983 complaint is a specific one that both necessarily implies the earlier decision is invalid *and* is necessary to the success

of the § 1983 suit itself." *Id.* Thus, "when a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his § 1983 suit, the *Heck* bar does not apply." *Id.*

A determination of whether a claim is barred by *Heck* turns on the plaintiff's allegations. In his verified complaint, Jones alleged that the Defendants' use of force was not justified because he did not do anything to provoke it. Rather, he asserts that the use of force was Defendants' retaliation for Jones's exercise of his First-Amendment rights. (Doc. 20 at 9). Jones alleges that Schwarz authorized Goldhagen to use any force necessary, and Goldhagen entered the cell and was swinging his fist at Jones. Jones asserts that he simply put his hands behind his back and "did not move, twitch, nor otherwise resist." *Id.*

On August 18, 2015, Goldhagen issued the following disciplinary report (Log # 135-151305):

> On August 18, 2015, I was assigned as internal security officer. At approximately 8:39AM, inmate Jones, who was present in his assigned cell, L4206, was given orders to submit to restraints so he could be escorted to medical for a pre-confinement physical due to a prior rule violation. After several minutes and more orders, inmate Jones stated, "Ok, I'll cuff up." Captain J. Schwarz then instructed Officer Denmon, Officer Pogue, Officer Beaudry, and myself to enter the cell and place inmate Jones in restraints. Upon entering the cell, inmate Jones stated, "Let's go motherfuckers" and attempted to strike me with a closed fist to the facial area. It then became necessary to utilize reactionary physical force to defend myself against inmate Jones' actions that were likely to cause injury to me.

(Doc. 77-3 at 1). After conducting a disciplinary hearing where Jones entered a plea of not guilty, the disciplinary team found Jones guilty of the charge. As a result, Jones lost 364 days of gain time. (Doc. 77-3 at 2).

Defendants argue that for Jones's operative facts to be true—*i.e.* that Schwarz authorized Goldhagen and the other Defendants to attack Jones without provocation and that the Defendants did so—this necessarily would undermine and contradict the disciplinary decision that found Jones guilty of Battery or Attempted Battery on a Corrections Officer. Thus, to the extent Jones is asserting an excessive force claim as to Defendant's initial use of force, his claim is barred by *Heck*. In other words, consistent with *Heck*, Jones cannot assert an Eighth Amendment claim against Goldhagen to the extent Goldhagen acted in self-defense and he cannot assert an Eighth-Amendment claim against Schwarz to the extent he authorized Goldhagen to use force in self-defense or failed to protect Jones from such force.

As the Defendants concede, however, *Heck* does not preclude a claim that the *amount of force* the Defendants' used was excessive and continued even after Jones was restrained. To the extent Schwarz authorized or ratified a use of excessive force, or—as discussed below—failed to protect Jones when Schwarz perceived other Defendants using excessive force, Jones also may proceed to trial on this claim.

## 2. *Failure to Protect Claim*

Defendants also argue that Jones's claim for failure protect is barred by *Heck* and that Defendants subjectively knew that the use of force was necessary to restrain Jones. (Doc. 77 at 15-16).

"An officer who is present and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008) (quoting *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007)); *Dukes v. Miami–Dade Cnty.*, 232 F. App'x. 907, 913 (11th Cir. 2007); *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000). This liability, however, arises only when the officer is in a position to intervene and fails to do so. *Priester*, 208 F.3d at 924; *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998). A prison official responds "in an objectively unreasonable manner if he knew of ways to reduce harm but knowingly declined to act or if he knew of ways to reduce the harm but recklessly declined to act." *Rodriguez v. Sec'y Dept. of Corr.*, 508 F.3d 611, 620 (11th Cir. 2007).

In his verified complaint, Jones asserts that after Defendants restrained him, Defendants threw him to the floor, choked him, and caused him to lose consciousness. (Doc. 20 at 10-11). Jones further alleges in his verified complaint

that, upon regaining consciousness, Goldhagen inserted a metal object into Jones's rectum and other Defendants—whom Jones claims he cannot identify with specificity in light of the way Defendants restrained him—bent his wrists and ankles. (*Id.*). Defendants argue that Jones never lost consciousness and the use of force ceased as soon as he was restrained, these are precisely the type of factual disputes that courts are not permitted to decide at the summary-judgment stage.

Defendants also concede that there is a genuine issue of material fact with respect to whether the magnitude of the force Defendants used was necessary. (Doc. 77 at 10, 14). Additionally, there is a genuine dispute as to whether Defendants continued to employ force even after Jones was fully restrained. (Doc. 20 at 10-11; Doc. 77 Exhibit D at 8:52; Doc. 95 at 21). These issues are not barred by *Heck* insofar as Jones has put forth sufficient evidence to create a factual narrative— admittedly disputed by Defendants—which would allow Jones's conviction for battery or attempted battery of a corrections officer to stand and which would still allow him to prevail on a failure to protect claim. *Dixon*, 887 F.3d at 1238; *Wells v. Cramer*, 158 F. App'x 203, 204 (11th Cir. 2005).

Defendants also direct the court to an affidavit of Nurse Kelli Caswell. Caswell's affidavit states that Jones's medical records do not support Jones's assertion that a metal item was placed in his rectum or that he was choked to the

point of losing consciousness. (Doc. 77-4 at 2). Caswell's affidavit, however, does not establish a lack of a genuine issue for trial. Jones asserts in his verified complaint that Defendants' use of force continued after he was fully restrained. Caswell's affidavit does not contradict that assertion, but even if it did, this would simply show that there is conflicting evidence, which is commonly the case when a genuine issue of material fact exists. *See Sears v. Roberts*, 922 F.3d 1199, 1208 n.4 (11th Cir. 2019) (noting that a nurse's report did not establish conclusively whether force was applied once the plaintiff was compliant, and a genuine issue of material fact remained).

Furthermore, although the records from Jones's post-use-of-force examination do not indicate that Jones complained about being sodomized by Defendants, it is undisputed that Schwarz remained with Jones during the post-use-of-force examination. Jones asserts that this intimidated him and prevented him from relating to medical personnel what Defendants had done. That may or may not be true. It is a factual dispute, and federal courts are not authorized to decide such factual issues when adjudicating summary judgment motions.

Defendants also argue that they are entitled to summary judgment because Jones's post-use-of-force examination records note that the examining nurse did not find any injuries on Jones's hands. (Doc. 77-4). FDC records from subsequent medical examinations of Jones's hands, however, do indicate bruising consistent

with Jones's claims. (Doc. 77-4 at 8-12). Defendants argue that this simply proves that Jones's injuries did not result from any force that they employed. Jones, not surprisingly, argues that this simply shows that the medical personnel who conducted the post-use-of-force examination did shoddy work. Again, this further establishes that there are genuine issues of material fact that must be resolved at a trial. *See Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 853 (11th Cir. 2012); *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011); *Sears*, 922 F.3d at 1208 n.4.

As to the other essential elements of a failure to protect claim, Jones alleges—and the Defendants do not dispute—that Schwarz, Denmon, Pogue, and Beaudry were present when force was used on Jones. (Doc. 20 at 5, 9-11). There is evidence, therefore, which indicates that each Defendant was in a position to protect Jones from excessive force. Defendants concede that there is a genuine issue of material fact with respect to whether the magnitude of the force Defendants used was necessary. (Doc. 77 at 10, 14). Additionally, there is a genuine dispute as to whether Defendants continued to employ force even after Jones was fully restrained. (Doc. 20 at 10-11; Doc. 77 Exhibit D at 08:52; Doc. 95 at 21). These issues are not barred by *Heck* insofar as Jones has put forth sufficient evidence to create a factual narrative—admittedly disputed by Defendants—which would allow Jones's

conviction for battery or attempted battery of a corrections officer to stand and which would still allow him to prevail on a failure to protect claim. *Dixon*, 887 F.3d at 1238; *Wells*, 158 F. App'x at 204.

Because Jones has submitted evidence as to each essential element, and there are genuine issues of material fact with respect to Jones's failure to protect claim, Defendants are not entitled to summary judgment on this claim, other than as to the initial use of force discussed above.

## B.   <u>Retaliation Claim</u>

Defendants also move for summary judgment on Jones's First-Amendment claim of retaliation. (Doc. 77 at 19). In that claim, Jones asserts that Defendants employed excessive force to retaliate against him because Jones had filed grievances against W.J. Strain and a bar complaint against Hagan. (Doc. 20 15; Doc. 95 at 16).

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were 'the result of [the inmate] having filed a grievance concerning the conditions of his imprisonment.'" *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoting *Farrow*, 320 F.3d at 1248). In order to "establish a First Amendment retaliation

claim, a prisoner need not allege the violation of a separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." *Id.*

To prevail on a retaliation claim, a plaintiff must establish that:

(1) he engaged in constitutionally-protected speech;

(2) the plaintiff suffered adverse action that likely would deter a person of ordinary firmness from engaging in such speech; and

(3) there is a causal relationship between the defendant's retaliatory action and the plaintiff's protected speech. *O'Bryant*, 637 F.3d at 1212; *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Bennet v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005).

### 1.   *Jones Failed to State a Claim of Retaliation Regarding False DRs*

Jones first asserts that Goldhagen retaliated against him by authoring two false disciplinary reports: # 135-151304 and # 135-151305. When a plaintiff claims that a defendant's act of retaliation consisted of filing false disciplinary reports, the plaintiff must demonstrate that he was not convicted of the violation, that he was not afforded due process, or that there was insufficient evidence to sustain the conviction. *O'Bryant*, 637 F.3d at 1215; *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008)). "If a prisoner is found guilty of an actual disciplinary infraction

after being afforded due process *and* there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in the disciplinary report." *O'Bryant*, 637 F.3d at 1215; *see Hartsfield*, 511 F.3d at 829.

Here, there is no dispute that the disciplinary panel found Jones guilty of the conduct that Goldhagen alleged in the two disciplinary reports. As to whether the FDC afforded Jones due process, in *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court "outlined the specific hearing procedures that prison disciplinary panels must comply with to satisfy the standards of procedural due process in the prison setting." *O'Bryant*, 637 F.3d at 1213. The Court "instructed that prisoners must receive (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action." *Id.* at 1213 (citing *Wolff*, 418 U.S. at 563-67).

With respect to disciplinary report # 135-151304 and # 135-151305, the record establishes that the FDC complied with the requirements of *Wolff*. For example, the FDC provided Jones with written notice of the charges and his rights. (Doc. 77-2; Doc. 77-3 at 1). The FDC also afforded Jones an opportunity to present

evidence and witnesses. The FDC also provided Jones with written findings and a summary of the evidence relied upon by the disciplinary panels. (Doc. 77-2 at 1). Indeed, the FDC provided Jones rights beyond those mandated by *Wolff*, such as the right to request staff assistance—which Jones declined—and the right to appeal the panel's decision. (Doc. 77-3 at 1-2; Doc. 77-3 at 1-2).

Accordingly, with respect to both disciplinary reports issued by Goldhagen, the FDC afforded Jones due process, and Jones did not dispute this in his verified fourth amended complaint or his response to Defendant's motion for summary judgment.

As to whether the FDC had sufficient evidence to find Jones guilty of the disciplinary reports, the FDC need only have "some evidence" that Jones committed the disciplinary violations. *See O'Bryant*, 637 F.3d at 1215 (quoting *Hartsfield*, 511 F.3d at 829).

With respect to disciplinary report # 135-151304, the disciplinary panel related the factual basis for its finding of guilt:

> Based in part upon the written statement of Goldhagen and confirmed in the investigation that Inmate Jones, Gerrard DC#503034 was guilty of disobeying a verbal order, when on 08/18/15, at approximately 8:31A.M., while assigned as the internal security supervisor at Santa Rosa CI Annex, Goldhagen was present at cell L4206, when he issued an order for Inmate Jones to submit to restraints to be escorted to medical. Inmates Jones refused the order to submit to restraints. Inmate Jones did not provide any new witnesses or evidence during the hearing

but did offer a verbal statement in his defense. All witness statements were read and all evidence was reviewed and considered by the disciplinary team.

(Doc. 77-3 at 2).

The written statement of Goldhagen described the incident as follows:

On August 18, 2015, I was assigned as an Internal Security Officer. At approximately 8:31AM, I was present in front of cell L4206, where Inmates Jones is assigned. At this time, I gave Inmate Jones several verbal order[s] to submit to restraints so that he could be escorted to medical for a pre-confinement physical due to a prior rule violation. Inmate Jones refused to comply.

(*Id.* at 1). Thus, the FDC had sufficient evidence to find Jones guilty of this disciplinary report.

With respect to disciplinary report # 135-151305, the disciplinary panel noted the factual basis for its finding of guilt:

Based in part upon the written statement of Goldhagen and confirmed in the investigation that Inmate Jones, Gerrard DC#503034 was guilty of battery or attempted battery on an officer, when on 08/18/15, at approximately 8:39 A.M., while assigned as the internal security supervisor at Santa Rosa CI Annex, Goldhagen was present at cell L4206, when inmate Jones was given orders to submit to restraints to be escorted to medical. After several orders, Inmate Jones stated that he would comply. Captain Schwarz, who was present, instructed Officer J. Denmon, Officer Pogue, Officer Beaudry, and Goldhagen to enter the cell and place inmate Jones in restraints. Inmate Jones at this time stated, "Let's go, mother fuckers" and attempted to strike Goldhagen with a closed first to the facial area. It became necessary for Goldhagen to use reactionary force to defend himself. Inmate Jones did not provide any new witnesses or evidence during the hearing but did offer a verbal

statement in his defense. All witness statements were read and all evidence was reviewed and considered by the disciplinary team.

(Doc. 77-3 at 2).

Goldhagen's written statement provided:

On August 18, 2015, I was assigned as internal security officer. At approximately 8:39AM, Inmate Jones, who was present in his assigned cell, L4206, was given orders to submit to restraints so he could be escorted to medical for a pre-confinement physical due to a prior rule violation. After several minutes and more orders, Inmate Jones stated "Ok, I'll cuff up." Captain J. Schwarz then instructed Officer Denmon, Officer Pogue, Officer Beaudry, and myself to enter the cell and place Inmate Jones in restraints. Upon entering the cell, Inmate Jones stated, "Let's go motherfuckers" and attempted to strike me with a closed fist to the facial area. It then became necessary to utilize reactionary physical force to defend myself against Inmate Jones' actions that were likely to cause injury to me.

(*Id.* at 1). Again, this demonstrates that the disciplinary panel had sufficient evidence to find Jones guilty of this offense.

Because there is no genuine dispute that the disciplinary panel had sufficient factual bases to find Jones guilty of the two disciplinary reports issued by Goldhagen, Jones cannot assert a claim of retaliation in which he claims that these disciplinary reports are the acts of retaliation. Accordingly, as to Jones's retaliation claim, the undersigned will address Jones's allegation only to the extent it alleges the following acts of retaliation: use of excessive force, denial of medical treatment, and "other acts."

## 2.    *False Statements Are Not Constitutionally-Protected Speech*

Defendants also argue that they are entitled to summary judgment on Jones's First-Amendment retaliation claim insofar as Jones failed to show that he engaged in protected speech with respect to the grievances that Jones filed.

It is well-established that an inmate who submits a grievance or complaint about prison conditions is engaging in constitutionally protected speech. *Smith*, 532 F.3d at 1276. There are limitations to a prisoner's First-Amendment right to free speech, however.

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources. Prison officials are therefore accorded latitude in the administration of prison affairs. This latitude includes the withdrawal or limitation many inmate privileges and rights. This means that an inmate's First Amendment right to free speech is not protected if affording protection would be inconsistent with the inmate's status as a prisoner or with the legitimate penological objective of the corrections systems.

*Id.* at 1277 (citations and quotations omitted). Accordingly, when a prisoner "violates a legitimate regulation, he is not engaged in 'protected conduct,' and cannot proceed" on a retaliation claim. *Id.* (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999)).

Here, the undisputed evidence is that W.J. Strain issued Jones a disciplinary report because Jones's grievances against W.J. Strain contained false statements. W.J. Strain's report states:

> On August 18, 2015, . . . at approximately 7:00AM, two grievances
> were received from Inmate Jones with written lies stating "[Strain] is
> also sending security staff in intimidate me for her and saying they will
> lock me up if I grieve this"; Captain Harries, Officer Simmons, Officer
> Wallace and Officer McClain threaten to intimidate him on behalf of
> the law library supervisor. Inmate Jones has made allegations towards
> the law library supervisor in reference to withholding request Inmate
> Jones has written, requesting legal services from law clerks and
> materials needed therefore filing grievances and reappraisals against
> the law library supervisor. Attached is all of the library records of
> services provided to Inmates Jones while he was housed in J-Dorm.

(Doc. 77-1 at 1) (typographical errors in original).

Jones's false statements (*i.e.*, that Strain had sent FDC staff to intimidate

Jones, that FDC staff threatened Jones on Strain's behalf, and that Strain was

withholding requests from Jones) are the bases for Jones's conviction of violating

Rule 33-602.314(9-10), which prohibits lying to FDC staff. (Docs. 77-1 at 2). Jones

has not shown that that conviction was invalidated. He may not, therefore, bring a

claim that would necessarily imply the invalidity of his conviction for lying in his

grievances against W.J. Swain—the grievances that Jones claims are protected

speech in his First-Amendment claim. *Heck*, 512 U.S. at 487.

Jones has not demonstrated that his written grievances against W.J. Strain

contained any allegations that would constitute protected speech. *See Smith*, 532

F.3d at 1276-77. Jones argues only that Defendants failed to produce Jones's written

grievances against W.J. Strain as exhibits to their motion for summary judgment.

(Doc. 99 at 3 ¶ G). But Defendants' failure to produce the written grievances is insufficient to establish a genuine dispute regarding whether these grievances constituted protected speech. As a matter of law, false statements are not protected speech that could support a claim of retaliation. *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("[F]alse statements are not immunized by the First Amendment right to freedom of speech."); *Smith*, 532 F.3d at 1276-77 (noting that falsehoods are not protected speech under the First Amendment); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (noting that frivolous grievances are not constitutionally protected). Accordingly, the grievances that Jones filed against W.J. Strain cannot form the basis of Jones's retaliation claim. The only other "speech" that Jones identified in his complaint was the bar complaint against attorney Hagen.

### 3.    *Adverse Actions Must be Sufficiently Severe*

"A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennet*, 423 F.3d at 1254. As discussed above, because the disciplinary panel found that Jones committed the acts alleged in his disciplinary report—Jones attempted to batter Goldhagen—Jones cannot predicate a First-Amendment claim of retaliation on these disciplinary reports.

In a conclusory fashion, Jones also alleged that Defendants engaged in "other" acts of retaliation. Jones does not articulate what "other acts" these Defendants engaged in. Rather, Jones appears to impute the actions of a non-defendant to the Defendants. Jones references paragraphs 18-26 of his verified fourth amended complaint. (Doc. 95 at 16). Paragraphs 18-26 of Jones's fourth amended complaint allege that Officer Richardson—whom Jones did not name as a defendant in his fourth amended complaint—engaged in misconduct, including threatening to beat, starve, and spray Jones with chemical agents if he grieved Defendants' alleged use of excessive force on August 18, 2015.[7] (Doc. 20 at 11-12 ¶¶ 18-26). Regardless, Jones offers no evidence indicating that Defendants in any way were responsible for Richardson's alleged threats.

Additionally, Jones requests that the District Court take judicial notice of retaliatory conduct that he alleges in a section 2254 action that he filed in the Middle District of Florida. *See Jones v. Fla. Dep't of Corr.*, No. 3:18-cv-390-MMH-JRK (M.D. Fla. Mar. 22, 2018). In that 2254 action, Jones alleged that "the state courts erred in dismissing his petition for writ of mandamus, and erred in ruling it 'mixed'

---

[7] Jones initially named Richardson as a Defendant in this suit, but he omitted Richardson in his final amended complaint. (Docs. 1, 20, 21). "[O]ne time defendants who are dropped from an amended complaint 'do not remain in the case.'" *L.S. v. Peterson*, 982 F.3d 1323, 1329 (11th Cir. 2020) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 221 n.13 (3d Cir. 2017)).

and erred in imposing filing fees/liens." Thus, his allegations in that section 2254 action are not even relevant to Jones's claims in this civil action. But even if the District Court were to take judicial notice of any allegations of misconduct in Jones's section 2254 petition, Jones offers no evidence tying Defendants to errors allegedly committed by the state court.[8]

Jones, however, has alleged two acts of retaliation that are sufficiently severe to constitute acts of retaliation under the First Amendment. Namely, as discussed above, he alleges that Defendants beat him on August 18, 2015, and then urged FDC medical personnel to deny him medical care for the wounds he allegedly received in that beating.

---

[8] In his previous complaints, Jones attempted to raise claims of denial of access to the courts, denial of access to the prison library, denial of access to grievance procedures, and a claim for discrimination in violation of the American's with Disabilities Act. (Docs. 1, 7, 11, 16). Chief United States Magistrate Judge Elizabeth M. Timothy screened Jones's complaints pursuant to 28 U.S.C. § 1915(e)(2)(B) and advised Jones that his complaints were deficient. She apprised Jones of the relevant law as to these claims and directed him to amend his respective complaints accordingly. (Docs. 9, 15, 19).

Judge Timothy also advised Jones that he should include in any amended complaint each claim that he wished to raise. Jones amended his complaint *four times*, and his fourth amended complaint does not contain allegations relating to this allegedly retaliatory conduct. In fact, Jones explicitly limits his claims insofar as he stated that he makes no other claims for relief outside of the facts alleged in his complaint. (Doc. 20 at 16). If Jones wanted to allege these additional acts in this lawsuit, he had ample opportunity to do so. At this late point—more than five years after Defendants' alleged conduct—the District Court should not permit Jones to assert new claims that he failed to raise in his fourth amended complaint.

### 4. *Failure to Create a Genuine Issue Regarding Causation*

With respect to the alleged acts of retaliation that are sufficient to state a claim of retaliation—excessive use of force and denial of medical care—Defendants argue that Jones has failed to create a genuine issue of material fact as to causation. (Doc. 77 at 27).

Jones was required to put forth sufficient evidence to create a genuine issue of material fact as to causation. A plaintiff must establish a "'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. ___, 139 S. Ct. 1715, 1722 (2019). This causation element requires a plaintiff to put fort some evidence which indicates that the alleged retaliatory conduct would not have occurred but for the defendant's retaliatory motive. *Hartman v. Moore*, 547 U.S. 250, 260 (2006); *O'Bryant*, 637 F.3d at 1217. Specifically, Jones was required to show a causal connection between his filing the bar complaint and the alleged acts of retaliation—the beating by Defendants and their efforts to ensure that medical personnel denied Jones medical care.

The sequence of events proves problematic for Jones's attempt to establish causation. Jones alleges that August 18, 2015 is the date that Defendants allegedly retaliated by using excessive force and urging medical personnel to deny him

medical treatment. (Doc. 77-2; Doc. 77-3). It is undisputed, however, that the Office of the Florida Attorney General did not even receive Jones's bar complaint against Hagan until August 19, 2015. (Doc. 77-5 at 2). Although it is unclear when Hagen became aware of the bar complaint, the earliest that the Office of the Florida Attorney General could have notified her of the complaint was August 19, 2015.

Because Jones's bar complaint against Hagan arrived at the Office of the Florida Attorney General *one day after* Defendants allegedly retaliated against Jones, the bar complaint could not have motivated Defendants' alleged acts of retaliation. Jones also does not offer any evidence indicating that Defendants knew of his bar complaint prior to August 19, 2015. For this reason too, Jones's First Amendment claim of retaliation fails, and Defendants are entitled to summary judgment on this claim.[9]

## D.   Requirement of Demonstrating More Than a *De Minimis* Injury

Defendants also seek summary judgment on Jones's claim for compensatory and punitive damages, arguing that Jones's injuries are *de minimis* and, therefore, do not qualify for such relief. (Doc. 38 ).

---

[9] Goldhagen filed the allegedly-false disciplinary reports against Jones on August 18, 2015. Thus, even if these disciplinary reports qualified as acts of retaliation, the temporal sequence precludes Jones from demonstrating that Goldhagen filed the disciplinary reports in retaliation for Jones filing the bar complaint against Hagan.

The Prisoner Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (1996) ("PLRA"), was enacted "[i]n an effort to stem the flood of prisoner lawsuits in federal court." *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). Part of the PLRA has been interpreted to preclude inmates from recovering compensatory and punitive damages for lawsuits claiming constitutional violations when filed while the inmate is in custody, unless the inmate-plaintiff suffered a physical injury or a sexual assault. *See* 42 U.S.C. § 1997e(e); *see Al-Amin v. Smith*, 637 F.3d 1192, 1199 (11th Cir. 2011); *Harris*, 216 F.3d at 984-85. The relevant provision states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). Section 1997e(e) precludes an award of compensatory or punitive damages in relevant cases when there was no physical injury or the commission of a sexual act, or when any injury was *de minimis*. *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015); *Al-Amin*, 637 F.3d at 1199.

To survive a motion for summary judgment on the basis of § 1997e(e), a plaintiff must offer evidence that he was the victim of a sexual act or a physical injury that was more than merely a *de minimis* one. *Mitchell v. Brown & Williamson*

*Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002) ("In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis.*"); *see Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x 555, 557 (11th Cir. 2014) (citation omitted); *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007). The requisite physical injury "need not be significant but must be more than *de minimis.*" *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002); *see Logan v. Hall*, 604 F. App'x 838, 840 (11th Cir. 2015) ("we have held that the injury need not be significant"); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (holding that the physical injury required by § 1997e(e) "need not be significant" but "must be more than *de minimis*").

There is "no consensus for how to determine when a physical injury is 'greater than de minimis.'" *Thompson v. Smith*, 805 F. App'x 893, 904 (11th Cir. 2020); *Chatham v. Adcock*, 334 F. App'x 281, 284 (11th Cir. 2009). There certainly is no "bright line" test for whether an injury is *de minimis*. Instead, this issue requires a fact-intensive inquiry.

On one end of the spectrum an injury certainly would be *de minimis* if it entailed only "a routine discomfort associated with confinement." *Thompson*, 805 F. App'x at 904 (citing *Alexander v. Tippah Cnty.*, 351 F.3d 626, 631 (5th Cir. 2003);

*Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir. 1999)). Fleeting pain or mere discomfort, however, is insufficient to meet the standard of § 1997e(e). *Dixon*, 225 F. App'x at 799; *Oliver*, 289 F.3d at 629 (holding that back and leg pain allegedly caused by an overcrowded cell was insufficient to satisfy the physical injury requirement because by the inmate's own admission it was "nothing too serious"). Likewise, courts typically consider minor cuts and bruises to be *de minimis* physical injuries. *See, e.g.*, *Dixon*, 225 F. App'x at 799 ("[M]ere bruising from the application of restraints is only a *de minimis* injury."); *Nolin v. Isbell*, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (bruises received during an arrest were non-actionable *de minimis* injury); *Harris*, 190 F.3d at 1286 (holding that a forced "dry shave" was a *de minimis* injury); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (noting that "a sore, bruised ear lasting for three days" was a *de minimis* injury).

Injuries which cause bleeding, swelling, cuts, and bruising can be considered more than *de minimis*. *See, e.g.*, *Hudson*, 503 U.S. at 10 (holding that bruises, swelling, loosened teeth, and a cracked dental plate were more than a *de minimis* injury to support Eighth Amendment violation); *Johnson*, 280 F.3d at 1312 (holding that a head injury which caused swelling and seizures, along with cuts and bruises to the face, shoulders, and upper back, were was more than *de minimis* injuries). Additionally, a broken bone likely constitutes more than a *de minimis* injury. *See,*

*Tate v. Rockford*, 497 F. App'x 921, 925 (11th Cir. 2012) (suggesting that broken bones would constitute more than a *de minimis* injury).

In Jones's case, Defendants assert that the medical records and the video evidence do not support Jones's allegations regarding the extent of his injuries and that, at most, Jones's injuries were *de minimis*. But "even where the entire series of events is recorded, video evidence is not obviously contradictory if it fails to convey spoken words or tone, or fails to provide an unobstructed view of the events." *Logan*, 439 F. App'x at 800 (citation omitted); *see also, Pourmoghani–Esfahani v. Gee*, 625 F.3d 1313, 1315, 1316 n.2 (11th Cir. 2010) (declining to rely on video evidence to discredit the plaintiff's version of events entirely, because the video lacked sound and was periodically obstructed.).

The FDC's video recording of Jones's medical examination does not include a verbatim account of what Jones and the FDC medical personnel said during Jones's examination. (Doc. 77, Exhibit D). Although it appears that the medical provider examined Jones's hands, Defendants had restrained Jones's hands behind his back. Thus, it is highly unlikely that the nurse would have been able to perform a thorough examination of Jones's hands while they were restrained behind his back.

There also is a factual dispute as to whether one or more Defendants instructed the nurse not to treat Jones. Furthermore, as noted above, on August 21, 2015, only

three days after Defendants used force on Jones, Jones's "hands and fingers were swollen." (Doc. 77-4 at 8). Similarly, on August 26, 2015, the objective component of the medical examination indicated that Jones's hands had "swollen joints especially right ring finger and pain in right ring finger, right pinky, and left index finger." (Doc. 77-4 at 10). Additionally, the medical provider found that the condition of Jones's fingers warranted the taking of x-ray images. (*Id.*). Although Defendants argue that these injuries are not related to their use of force on Jones, in his verified complaint, Jones asserts otherwise. Thus, there is a genuine issue of material fact.

In light of the genuine dispute regarding the cause of Jones's injuries, as well as the alleged sexual assault of Jones with a metal object, Defendants have failed to show that Jones's request for compensatory and punitive damages is barred as a matter of law.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.      Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.

2.      Summary judgment be **GRANTED** for Defendants:

   a.  as to Plaintiff's Eighth-Amendment claims that Defendant's *initial use of force* on August 18, 2015 was excessive and that Defendants failed to protect him from that initial use of force; and

   b.  as to Plaintiff's First-Amendment claim of retaliation.

  3.  Defendants' motion for summary judgment be **DENIED** in all other respects.

  4.  This case be recommitted to the undersigned to prepare for trial Plaintiff's remaining claims of excessive force and failure to protect.

  At Panama City, Florida, this <u>16th</u> day of February, 2021.

       /s/ *Michael J. Frank*
       **Michael J. Frank**
       **United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**